MALLOY & COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57906.   Promulgated February 18, 1936.

*Phil D. Morelock, Esq.*, for the petitioner.
*W. R. Lansford, Esq.*, for the respondent.

OPINION.

MATTHEWS: The respondent has taken the position that the contract executed in August 1928 constituted the sale of a capital asset; that the full amount of $140,000 received by the petitioner in 1928 should be taxed as income in that year, diminished only by that portion of the leasehold costs attributable to the gas leases; that the petitioner is not entitled to any deduction for depletion based on the total sale price of $140,000; and that the petitioner is not entitled to deduct therefrom the unexhausted cost of plant and equipment, or expenses incurred and to be incurred in the performance of the contract.

Although the petitioner originally reported the sum of $140,000 as income for 1928, and claimed depletion of 27½ percent, limited to 50 percent of the net income from the property, it is now claiming that the $140,000 should be spread or prorated over a period of 10 years representing the estimated life of profitable production of the gas field from the effective date of the contract, and that the cost of plant and equipment and operating expenses should likewise be prorated and allowed as deductions annually over the same period; or if it should be held that the entire amount of $140,000 constituted income for 1928, then such amount should be reduced by the estimated expenses of operation and the unexhausted cost of plant and equipment as of August 1, 1928, plus the sums later expended in constructing additional plants. Regardless of the method by which the net income for 1928 is computed, the petitioner earnestly contends that it is entitled to a deduction for depletion on the total sale price at the rate of 27½ percent, in accordance with the provisions of section 114 (b) (3) of the Revenue Act of 1928.

We construe the contract of August 1928 to provide for the sale of all the gas to be produced during the life of the field by the petitioner under certain oil and gas leases which it held. Under its leases petitioner had the right to extract gas and oil and the gas content of the oil. Under such leases, petitioner did not become the owner of these products until they were extracted and possessed. *Osborn* v. *Arkansas Territorial Oil & Gas Co.*, 103 Ark. 175; 146 S. W. 122. Furthermore, petitioner was required under the contract to extract and deliver the gas to the purchaser at its own expense. Since the petitioner was not the owner of the gas in place, the con-

tract can not be construed to convey any title or interest which did not belong to the petitioner. Under these circumstances we hold that the contract was for the sale of gas to be produced during the life of the field and not a sale of the gas in place or an assignment of a portion of the petitioner's leasehold rights.

The petitioner correctly included in its income for 1928 the sum of $140,000 which it received in that year in payment of the gas produced after August 1, 1928, and as an advance payment for the gas to be produced during the life of the field and delivered by it to the Standard Oil Co. of Louisiana. This amount clearly constitutes gross income within the meaning of section 22 (a) of the Revenue Act of 1928 and since it was received in 1928, must be included in income for that year, section 42. Under petitioner's method of accounting, it was properly accounted for in the year 1928.

In the view we take of the case, it is not necessary to determine the life of the field and we have therefore made no finding of fact as to this.

If the petitioner had extracted and sold the gas from month to month, as had been its previous practice, there could be no doubt that it would be entitled to deduct percentage depletion, as provided in section 114 (b) (3) of the Revenue Act of 1928, set out in the margin.[1] So far as its right to a deduction for depletion is concerned, we think it is immaterial that petitioner sold all the gas to be produced for a lump-sum consideration which was paid to the petitioner during the taxable year. The amount thus received by the petitioner is no less "gross income from the property" and it is, therefore, entitled to a deduction for depletion computed in accordance with the provisions of section 114 (b) (3). The respondent's action on this issue is reversed. Cf. *Bankline Oil Co.*, 33 B. T. A. 910.

There remains for our determination the question whether the petitioner may offset against the total consideration of $140,000 the unexhausted cost of its plants and equipment and operating expenses to be incurred in later years in connection with the performance of the contract. Petitioner continued to own these properties and subsequently constructed two additional plants to be used in the operation of its business. The plants and equipment were used for the production of oil as well as for the production of casing-head gas. It is impossible to allocate any part of the operating

---

[1] SEC. 114. (b) *Basis for depletion.—*

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

expenses to the production of the gas. In each year of operation, therefore, the petitioner will be entitled to a deduction for depreciation on these physical properties and for operating expenses incurred in that year. Petitioner may not anticipate these deductions but they must be charged against income from the sale of future products derived from the petitioner's wells. The petitioner's contention on this point is denied.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK dissents.

---

TRAMMELL, dissenting [2]: I am unable to agree that the entire amount of $140,000 is gross income in 1928. The fact is that it can not be determined what part, if any, of said amount constituted gross income, or certainly net income.

The petitioner sold the gas output, which it would require several years to produce and deliver, for $140,000, received in advance. If the expenses of production, including the exhaustion of physical equipment used for that purpose, equaled the amount received, there would have been no income at all. If a contractor receives an amount in one year as a contract price for building a house, obviously the total amount received is not income. There must be offset against the amount received what it cost to build the house. The illustration is applicable to this case in that petitioner received $140,000 in 1928 for the production and delivery of gas in future years. What it cost to produce and deliver the gas, certainly, would reduce the profit the taxpayer received.

The respondent takes the position that the contract constituted a sale of a capital asset; that the full amount received by petitioner in 1928 should be taxed as income for that year, diminished only by that portion of the leasehold cost applicable to the gas leases; that the petitioner is not entitled to any deduction for depletion based on the amount of $140,000 so received; that petitioner is not entitled to deduct the unexhausted cost of plant and equipment nor expenses incurred or to be incurred in the performance of the contract.

In my opinion, the amount received should either be spread or prorated over the estimated period representing the life of profitable production from the effective date of the contract. In other words, the amount received should be allocated in accordance with the amount of gas delivered each year, and against that should be deducted expenses of operation, depreciation of plant, etc.; or the determination of the amount of taxable gain should be deferred until it could be determined what the actual amount of the taxable gain was. It is entirely possible that the taxpayer at the expiration

---

[2] This dissent was filed during Mr. Trammell's term of office.

of the contract had no gain whatever from the receipt of $140,000. While the taxpayer reported upon the accrual basis, that method clearly did not reflect income and some method should be used which would clearly reflect the income of the taxpayer. I see no objection to the use of the completed contract method in the determination of income in this case. In my opinion, it is immaterial that the respondent's regulations restrict the long term contract method of reporting income to building, installation, or construction contracts. Neither the Commissioner's regulations nor the taxpayer's erroneous method of accounting as to this transaction can operate to nullify the mandatory requirements of the statute that the computation of net income shall be made in accordance with such method as will clearly reflect the income.

We applied the long term contract method in the case of *Falketind Ship Co.*, 6 B. T. A. 44. In that case the taxpayer received money for passage and freight in advance of the voyage, which occurred during portions of two accounting periods. We held that the receipts or gross income should be offset by the expenses of the voyage subsequently incurred, and that the net income be reported for the year in which the voyage was completed. This decision was cited with approval in *Kahuku Plantation Co.*, 12 B. T. A. 977. The same principle is involved in *Kekaha Sugar Co., Ltd.*, 13 B. T. A. 690, affirmed on this point, 50 Fed. (2d) 322.

All receipts obviously do not constitute income. Before income can be received the cost of producing it must be returned. That is not true in this case.

MELLOTT agrees with this dissent.