PARNELL, INC. v. GILLER.

5-3076                                    372 S. W. 2d 627

Opinion delivered November 26, 1963.

*Joe B. Hurley, Keith, Clegg* and *Eckert,* for appellant.

*Brown, Compton & Prewett, Richard H. Mays,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellee Giller, the lessor, to require the appellant Parnell, the

lessee, to account for royalties assertedly due under a rather unusual lease providing for the commercial production of salt water from the lessor's land. Parnell sells the brine to a chemical company, which extracts bromine from it. The contract between Parnell and the chemical company requires Parnell to deliver the raw salt water (by pipeline) to the purchaser's plant and to dispose of the spent brine (by returning it to the earth) after it has been processed.

The royalty payable to the lessor is computed upon the market value of the salt water at the well. The question in the case is whether the lessee, in calculating the market value, is entitled to deduct its expenses in piping the salt water to the chemical company and in disposing of the spent brine. The chancellor allowed the deduction of the pipeline expense but denied the deduction of the disposal expense. Both sides have appealed.

We have concluded that both deductions must be allowed under this provision in the lease: "The royalty to be paid by Lessee is: On brine produced from said land and sold off the premises or used off the premises in the manufacture of bromine or other product therefrom, the market value at the well of one-eighth ($\frac{1}{8}$) of the brine so sold or used; provided, that on brine sold at the wells the royalty shall be one-eighth ($\frac{1}{8}$) of the amount realized from such sale."

This lease was evidently patterned after a common form of oil and gas lease. In construing a similar clause in a gas lease we held, in *Clear Creek Oil & Gas Co.* v. *Bushmaier,* 165 Ark. 303, 264 S. W. 830, that where the gas was used off the premises the lessee was entitled to deduct its transportation and distribution expense in determining the market value of the gas at the well. In principle that case controls this one.

Here the parties agreed upon two different methods for computing the royalty, depending upon whether the brine was sold on or off the premises. The appellee is manifestly in error in contending that the lessee is entitled to no deductions whatever when the brine is sold off

the premises, for if that view were accepted there would be no difference at all in the two methods of computation. We must give effect to the parties' purpose in distinguishing the two situations.

As a transportation cost the pipeline expense falls within the letter of the *Bushmaier* case. The expense of disposing of the used brine falls within its reasoning. Both services were demanded by the chemical company as a condition to its willingness to enter into the contract of purchase. It is not reasonable to suppose that the buyer would have agreed to pay as much as it did for the brine if the performance of these necessary steps had been its own responsibility. Hence, as in the *Bushmaier* case, these charges must be taken into account in fixing the market value at the well.

The appellee earnestly argues that it ought not to be charged with either expense, because both charges are within the exclusive control of the lessee and are therefore subject to being unfairly or even fraudulently inflated. The parties, however, undoubtedly contemplated the lessee's control in the matter, for it is the lessee that has the power to arrange sales off the premises. There is no proof that any excessive charge has been made. Should that situation arise the law may be expected to provide a remedy.

Finally, it is contended that if these deductions are permitted the way will be open for the lessee to charge all sorts of ordinary overhead and business expenses in the computation of market value. The answer is that the two items in dispute are not general business expenses of the lessee. They are services that are essential to and peculiar to the marketing of the product itself. They are services that might equally well have been undertaken by the purchaser. They are services that were considered by the purchaser in its determination of what it was willing to pay for the product. In the circumstances it cannot be doubted that the cost of the services should be credited to the lessee in fixing the market value of the raw salt water at the well.

The decree is reversed on direct appeal and affirmed on cross appeal; the cause is remanded for further proceedings.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice (dissenting). I would affirm the Chancery decree on all points. As to the cost of transporting the raw brine from the well to the point of sale, I agree with the Majority that the case at bar is ruled by *Clear Creek Oil & Gas Co.* v. *Bushmaier*, 165 Ark. 303, 264 S. W. 830. But I disagree with the Majority as to charging against the landowner the cost of the disposal of the refuse fluid after the brine has been extracted at the plant of the purchaser. The cost of the disposal of the said refuse fluid was a business expense, to be paid by Parnell from the 7/8ths working interest, just like advertising, salaries, telephone, and such other items are business expenses and not to be charged against the royalty interest.

The present case was tried on a stipulation as to the facts, which showed:

1. That Giller executed the lease to Kin-Ark Oil Company.

2. That Kin-Ark Oil Company assigned the lease to Parnell.

3. That Jett Drilling Company entered into a contract with Arkansas Chemicals, Inc., in which contract Jett agreed:

"Article 3—Delivery and Disposal. (a) SELLER shall deliver Raw Brine via pipeline to the storage facilities of the plant of BUYER upon request of BUYER. (b) SELLER shall receive all of BUYER'S Spent Brine at the plant of BUYER via BUYER'S effluent pipeline and dispose of it in a manner which will not adversely affect the Raw Brine being supplied to BUYER."

4. That Jett Drilling Company assigned its rights under the contract to Parnell; so Parnell is now operating with Arkansas Chemicals, Inc. under the above quoted provision.

In the stipulation there is no showing that this disposal clause above copied was necessary to the sale of the raw brine. There is no showing that it is the usual and customary clause in such an instrument. Until Parnell made some such showing, I think the expense of the disposal of the refuse fluid should be held to be a business expense, and the landowner should not be required to pay from his ⅛th royalty a portion of a business expense incurred by the holder of the ⅞ths working interest.

Since the Bushmaier case, involving gas, was used as a precedent on the first point—transportation of the raw brine to the point of sale—I have searched various oil and gas cases for one with a factual situation similar to the one here; but my search has been fruitless. In Summers on Oil & Gas Permanent Ed. Vol. 3A, § 589 *et seq.*, there is a discussion of Royalties; and in § 590 there is a discussion of the expenses of removing water and other foreign substances from crude oil; but the cited cases contain language different from that in the lease here involved. There is an annotation in 73 A. L. R. 2d 1056 entitled, ''Expenses and taxes deductible by lessee in computing lessor's oil and gas royalty or other return.'' The annotation states that each case depends on the particular terms of the lease involved (*e.g.,* ''net costs'' is distinguishable from ''costs''); and the annotation says of operational expenses:

''Notwithstanding the fact that a lessor's royalty is ordinarily to be paid or rendered free of all the expenses of operating the lease, that is, the expenses of exploring and drilling and bringing the products to the surface and delivering the same into tanks or pipelines, a particular lease may of course entitle the lessee or operator to deduct such expenses.''

Under the lease and the sales agreement with Arkansas Chemicals, Inc., here involved, the *disposal* of the refuse fluid after the brine has been removed at the Purchaser's plant appears to me to be an operational or business expense that should be borne by appellant as the operator or the owner of the ⅞ths working interest. The

Bushmaier case limits the expenses that may be charged against the landowner to *transportation* and *distribution*;[1] but here, the Court is allowing the lessee to add another expense, that is, *a disposal expense*. The disposal clause here involved should certainly be construed most strongly against Parnell, who accepted and operated under the Arkansas Chemicals, Inc. agreement, rather than against Giller, who had no part whatsoever in framing the Arkansas Chemicals, Inc. agreement, and who never operated under it.

I would affirm the Chancery decree in its entirety.

---

[1] Here is the language: "The prices prevailing at the nearest place where the product can be sold, less transportation and distributing charges, show the value of such product at the place of delivery as nearly as it is possible to show such value."