OSBORN *v.* ARKANSAS TERRITORIAL OIL & GAS COMPANY.

Opinion delivered April 8, 1912.

1. MINES AND MINERALS—NATURAL GAS.—Natural gas is a fluid mineral,
   and so long as it remains under ground it is a part of the realty under
   which it lies. (Page 178.)

2. SAME—NATURAL GAS—CONVEYANCE.—A conveyance of gas in its
   natural state requires all the formalities of a conveyance of any other
   interest in land.   (Page 179.)

3. SAME—CONVEYANCE—TITLE ACQUIRED.—A conveyance of land with-
   out any reservation passes to the grantee the title to natural gas
   beneath the surface, although such gas has escaped from the land of
   an adjacent owner.   (Page 179.)

4. SAME—GAS LEASE—RIGHTS ACQUIRED.—A lease of the oil and gas in
   and under certain land and of the land for the purpose of operating
   for gas and oil, which gives all rights necessary for such operations,
   gives the right to explore the land and take gas therefrom, but is not
   a present sale of the gas and does not pass title thereto until actually
   taken into possession by the lessee.   (Page 180.)

5. SAME—SALE OF LAND SUBJECT TO OIL AND GAS LEASE.—Where an
   oil and gas lease is made by one party to another, covering a certain
   tract of land, and different persons become the owners of portions
   thereof, each one is entitled to the oil or gas produced on his tract
   and to the royalty arising therefrom.   (Page 180.)

Appeal from Sebastian Chancery Court, Fort Smith
District; *J. V. Bourland,* Chancellor; reversed.

*A. A. McDonald,* for appellant.

The court erred in allowing appellants only one-eightieth
part of the rent from all wells on the forty acre tract.   Appel-
lants are entitled to rental for all gas wells producing on their
half acre after the execution and delivery of their deed. Archer's
Law & Practice in Oil and Gas Cases, 884; *Id.* 894, § 14;
68 O. St. 259; 67 N. E. 494; 39 W. Va. 231; 43 W. Va. 826;
50 *Id.* 344; *Id.* 299; Gould on Waters, § 291; 88 Pa. 198;
53 Pa. 229.

*Geo. W. Dodd*, for appellees.

The doctrine announced by the Pennsylvania court as is directly in point, and its reasoning is so clear, cogent nod conclusive, that it should be followed here. 160 Pa. 559; 28 Atl. 934; 40 Am. St. Rep. 733; 184 Pa. 554; 39 Atl. 57.

Frauenthal, J. In March, 1906, T. N. Sloat, being the owner and in possession of a tract of land containing eighty acres situated in Sebastian County, executed to one S. S. Smith an oil and gas lease covering the entire tract. This lease was acknowledged by the lessor, and was duly recorded on April 5, 1906. Thereafter the Arkansas Territorial Oil & Gas Company acquired and became the owner of said lease by mesne conveyances from the original lessee. By the terms of said lease the lessor did "grant; demise and let unto the said lessee all the oil and gas in and under 'said land,' and also said tract of land for the purpose of operating thereon for said gas and oil, with the right to use water therefrom, and all rights or privileges necessary or convenient for conducting said operations, and the transportation of oil and gas." It was further provided in said lease that the lessee should have and hold the same "for the use of the lessee, his heirs or assigns, for the term of ten years from the date hereof, and as much longer as oil and gas is found in paying quantities thereon, yielding and paying to the lessor the one-tenth part or share of the oil produced and saved from the premises, delivered into pipe lines to the lessor's credit, and at the rate of fifty dollars per year for each gas well, when utilized off the premises."

In December, 1906, said lessor conveyed to one R. S. Harnest the fee simple title to forty acres of said land; and on May 24, 1909, said Harnest by warranty deed conveyed to certain named trustees of the Methodist Protestant Church, who are the appellants herein, the fee simple title to one-half acre of said land acquired by him, which is described in the deed by metes and bounds. Subsequently, said Harnest died intestate, leaving surviving him a widow and heirs, who are appellees herein.

In December, 1909, the Arkansas Territorial Oil & Gas Company obtained a gas well on the one-half acre of land conveyed to said trustees of said church, and later obtained

three other gas wells on the remainder of said forty-acre tract. It is conceded by all the parties that the gas company is liable for the amount of $50 per annum for the rental of each of said gas wells, and no question is made by any of the parties as to the rights of said company or as to the amount for which it is liable. The only controversy on the case arises between the trustees of said church and the heirs of said Harnest as to whom the rentals are payable. The former claim that they are entitled to all the rentals arising from any and all gas wells discovered and operated on said one-half acre of land conveyed to them, while the latter insist that the trustees of the church are not entitled to any of the rentals, and, if to any part thereof, only to such proportion of all the rentals of all the gas wells discovered and operated on the entire forty acres as the one-half acre bears in extent to the entire forty acres; that is to say, a one-eightieth part of the rentals.

The Arkansas Territorial Oil & Gas Company thereupon filed a bill in the nature of an interpleader, to which it made the trustees of said church and the heirs of said Harnest parties, offering to pay said rentals to the persons entitled thereto, and praying the court to decide the rights of the parties to receive same. Thereupon, the trustees of the church and the heirs of said Harnest filed separate pleadings, in which they respectively claimed rights to the rentals as above stated. The heirs of Harnest also made their pleading a cross complaint against said trustees of said church, and therein alleged that by the conveyance made by said R. S. Harnest to said trustees it was the intention of all the parties to convey only the surface right to said one-half acre instead of an entire fee therein, and they asked for a reformation of said deed in that regard.

Evidence was adduced relative to the issue as to whether or not a mistake had been made in said deed to said trustees of said church. The court found that no such mistake had been made, and that by said deed the trustees of said church obtained a fee simple title, not only to the surface, but to the entire one-half acre of land, and to all mineral, gas, oil and other rights under ground. It thereupon in its decree dismissed the cross complaint of the heirs of Harnest seeking the reformation of said deed. Upon an examination of the testimony as to this issue, we are of opinion that the alleged

mistake in the deed to said trustees of said church is not proved by clear and convincing evidence entitling the cross complainants to a reformation thereof, and that the decree in dismissing said cross complaint is correct.

Upon the hearing of the case, the chancellor further found that the lease obtained by said Arkansas Territorial Oil & Gas Company was an entirety, covering every part of said forty acres of land, and was not divisible, so that each of the contending parties herein did not acquire a separate and entire right to the rental of any gas well found on their respective parts of said forty acres of land; but that the parties owned in common said rentals, and each was entitled to such proportion thereof as the extent of their particular tracts bore to the whole forty acres. It thereupon decreed that the trustees of said church were entitled to one-eightieth of all the rentals arising from the gas wells then discovered, and which might thereafter be discovered and operated upon the entire forty acres during the life of said lease and that the heirs of Harnest were entitled to the remaining seventy-nine eightieths thereof.

Upon this appeal only one question is raised, and that is whether or not the chancellor erred in decreeing to said trustees of said church only one-eightieth part of the rentals from all wells on said forty acres, and in refusing to decree to them the entire rent arising from all gas wells discovered and operated upon the one-half acre tract of land conveyed to them. Upon this question we find that there are apparently conflicting opinions in the decisions of courts of other jurisdictions before whom similar questions have been presented. Those conflicting opinions are represented respectively by decisions rendered by the Supreme Courts of Pennsylvania and Ohio.

The Supreme Court of Pennsylvania has held "that when three contiguous tracts of land, subject to one oil and gas lease made by the owner in his lifetime, are devised by him respectively to his three children in equal parts, without mention of the lease, the royalties accruing thereunder after his death should be divided among the three devisees in proportion to the acreage held by each, although oil is produced from wells sunk on one of the tracts only." *Wettengel* v. *Gormley*, 160 Pa. St. 559.

The Supreme Court of Ohio has held that "where an oil

and gas lease is made by one party to another, covering two or more separate tracts of land, and different persons become the owners of said different tracts, each one is entitled to the oil and gas produced on his tract and to the royalty or rental arising from such tract." *Northwestern Ohio Nat. Gas Co.* v *Ullery*, 68 Oh. St. 259.

It has been found difficult to define the exact nature of natural gas, so as to fix definitely the rights of property thereto under all circumstances and conditions. This grows out of the fact of the peculiar vagrant characteristics of gas. As is said in the case of *Brown* v. *Vandergrift*, 80 Pa. St. 142: "Its fugitive and wandering existence within the limits of the particular tract is uncertain, and assumes certainty only by actual development founded upon experiment."

It has been said that natural gas is a fluid mineral substance, subterraneous in its origin, possessing in a restricted degree some of the properties of underground waters, and resembling water in some of its habits. It is found in the land, but has the power to escape without the volition of the owner of the land. It has, however, been well settled, we think, that natural gas is a mineral, and while in place in any particular land it is part of the land itself. Until severed from the realty, it is as much a part of it as coal or stone; and so long as it remains under the ground, it is treated as a part of the realty itself under the surface of which it lies. It therefore belongs to the owner of the land in which it is found; and as long as it remains in the particular tract of land, the owner of the surface is the owner of the gas beneath it. It has been uniformly held that conveyances of gas in its natural state in the land require all the formalities of a conveyance of any other interest in the same real estate, and that the ownership of the gas passes to the grantee of the land itself, in event the right to the same is not expressly reserved in the deed conveying the land. Thornton on Law Relating to Oil & Gas, §§ 20, 230; Donohue on Petroleum & Gas, p. 9; 16 Am. & Eng. Enc. Law, 220; *Funk* v. *Haldeman*, 53 Pa. 229; *Westmoreland Natural Gas Co.* v. *DeWitt*, 130 Pa. St. 235; *Wilson* v. *Youst*, 43 W. Va. 826.

In the case of *Brown* v. *Spilman*, 155 U. S. 665, in speaking of the characteristics of oil and gas as property, and the ownership thereof, the Supreme Court of the United States

said: "Petroleum, gas and oil are substances of a peculiar character. * * * They belong to the owner of land, and are part of it so long as they are part of it or in it or subject to his control; but when they escape and go into other land or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own land and taps a deposit of oil or gas extending under his neighbor's field, so that it comes into his well, it becomes his property."

It follows that, by a conveyance of a tract of land with no reservation therein, the grantee obtains title to all the natural gas that exists in and is captured beneath the surface thereof, although such gas has escaped from the land of an adjoining owner. It therefore forms a part of the tract of land in which it tarries for the time being, and during such time it is the property of the owner of the surface of the land.

A gas lease, such as is involved in this case, is a contract granting to the lessee the right to explore the land and to produce therefrom the gas therein discovered. It is not a present sale of or transfer of title to the gas, but, on account of its vagrant nature, the gas does not become actually owned until actually possessed. As is said in the case of *Williamson* v. *Jones*, 39 W. Va. 231: "The title is dependent on finding the gas by the purchaser in a limited time," and is inchoate. See also *Lawson* v. *Kirschner*, 50 W. Va. 344.

In the case of *Mansfield Gas Co.* v. *Alexander*, 97 Ark. 167, we held that by such a lease an exclusive right to make search for and to mine the discovered product is given to the lessee for a limited time. There is not granted by such lease an interest in the land; and a contingent sale only of the gas is thereby made. The right to the gas only arises upon its discovery and capture. By such a lease the privilege is given to the lessee of withdrawing the natural gas from the soil upon paying certain rentals reserved, and after the conveyance of the land by the lessor these rentals pass to his grantee.

It is conceded that, if the conveyance to the trustees of the church of this one-half acre of land had been made prior to the execution of said lease, the said trustees of the church would have acquired and would have become the owners of all the gas discovered and obtained from beneath the surface thereof. This is so, because the gas which is discovered and obtained

is a part of the land itself.   We are of the opinion that the fact
that the lease was executed before the conveyance to the trus-
tees of the church did not alter or lessen their right of owner-
ship of the gas, which was a part of the realty granted to them.
As was said in the case of *Natural Gas Co.* v. *Ullery, supra:*
"The fact that oil and gas are vagrant and transitory in their
nature does not prevent their adhering to and becoming a part
of the land while passing from one tract to another, and while
so in one tract they are a part of that tract and belong to the
owner thereof until they escape from such tract; and if brought
to the surface before such escape, they become personal prop-
erty belonging to the owner of the land.   It therefore irresistibly
follows that the oil or gas taken from the well on a particular
tract of land belongs to the owner of that tract, even though
the contract under which the well was drilled included other
tracts of land. · Because the contract of production may have
included two or more tracts of land, such contract can not
have the force of taking from the owner of one tract the oil or
gas adhering to such tract for the time being and bestowing it
upon the owner of another tract, where it may never have
been."

In that case the question arose between the rival claims
of different grantees of parts of the entire tract of land for
which the oil and gas lease had been executed to one lessee by
the original owner, covering the entire tract.   In speaking
of the decisions rendered by the Supreme Court of Pennsyl-
vania, the Supreme Court of Ohio in this case says:   "Those
cases were between devisees, and the question as between lessee
and purchasers from the lessor was not involved.   And, there-
fore, the principle of those cases is not directly applicable
here."   And we think that this observation is well made, and
is applicable to the rights of the respective parties in this case.
In the lease involved in the case at bar, it is provided that the
lessee will pay to the lessor rentals for the gas discovered in
the land covered by the lease, which was an eighty-acre tract,
at the rate of $50 per year for each gas well when utilized off
the premises.   The lessor knew when he granted to the trustees
of the church the one-half acre of land that a gas well might be
sunk and operated upon that part of the land, as well as upon
that which was retained by him.   In his conveyance, he made

no reservation of any gas or other mineral or of the rentals arising from this lease, but therein granted to the trustees of the church every product which was in and a part of the realty described in the deed executed by him. And this necessarily transferred the rentals arising from this lease for gas discovered and obtained on that portion of the land. He sold, and by this deed conveyed, every right and interest which he had in the one-half acre; and his representatives can have no interest therein greater than their ancestor would own, had he lived. By this conveyance, therefore, the grantees obtained the rentals on all gas discovered and utilized on this one-half acre of land at the rate of $50 per year for each gas well sunk and operated thereon, and the heirs of Harnest own the rentals on the remaining land. The right to such rentals was separate in each owner of the respective tracts, and was not in common. Because the lease covered the entire tract, this did not make the lease an entirety as to the several parts of the land that were thereafter purchased and acquired by different owners. Each purchaser from the lessor obtained and owned the gas in that part of the land bought by him, and was entitled to the rentals arising therefrom and none other. The respective parties have no special equities in these rentals springing from the fact that the lease covered the entire tract. The lessee had the right to explore the land for oil and gas, and after its discovery to mine it; and its only obligation thereunder was to pay the rental therefor to the owner thereof. The amount of the rental was fixed at the rate of $50 per year for each gas well actually utilized. The amount of the rent was not entire, but divisible according to the number of the gas wells actually sunk and operated. The gas obtained from each well was owned by the owner of the tract of land upon which it was sunk, and under the lease the rental therefor was disconnected with the remainder of the land covered by the lease. The contending parties, therefore, have each a legal right to the rentals for the gas which they respectively own by reason of their ownership of the respective tracts. The tracts are owned separately and not in common by the parties, and therefore each party owns respectively the gas discovered and captured on their respective tracts, and do not own the gas in common.

It follows that the parties are entitled respectively to the

whole rental of the gas mined on the tract of land owned by each of them. The chancellor erred in the decree which he rendered. The decree is therefore reversed, and this cause remanded with directions to enter a decree in accordance with this opinion.