CORNELIUS *v.* ARK. OIL & GAS COMMISSION

5-3750 402 S. W. 2d 402

Opinion delivered May 9, 1966

*Spencer & Spencer, Don Gillaspie,* for appellant.

*Bruce Bennett,* Attorney General; *Jeff Davis,* Special Asst. Atty. General, for appellee.

ED. F. MCFADDIN, Justice. This is a suit by appellants seeking: (a) to have certain lands included in the McKamie-Patton Unitized Pool, or, in the alternative, (b) to obtain a permit to drill for oil and gas on the lands so excluded from the pool. The appellants unsuccessfully sought relief from the appellee Oil and Gas Commission; then the appellants filed suit in the Columbia Chancery Court, which likewise denied them any relief; and this appeal followed.

The Arkansas Oil and Gas Commission (hereinafter called "Commission") was created by Act No.

105 of 1939 (See Ark. Stat. Ann. § 53-101 *et seq.* [1947])[1] and has been a tremendous benefit to the State of Arkansas and to the oil fraternity. The Act provided, in § 53-106: "All common sources of supply of crude oil discovered after January 1, 1937, if so found necessary by the Commission, shall have the production of oil[2] therefrom controlled or regulated in accordance with the provisions of this act, . . . "

In 1940 oil and gas were discovered in what is now known as the McKamie-Patton Oil Field. The first wells were in Lafayette County; but subsequent development extended the producing area to include a portion of Columbia County. In order to more effectively recover the greatest possible volume of oil and gas from the field, the owners of the "working interests" and of the "royalty interests" joined in a "unitization agreement," which was filed with the Commission in 1948, and resulted in the unitization of the Reynolds Member of the Smackover Lime Formation. This Formation is hereinafter referred to as "The McKamie-Patton Pool." It is the oil and gas from this Formation that was involved in *Dobson* v. *Oil & Gas Comm.,* 218 Ark. 160, 235 S. W. 2d 33; and it is this same Mc-Kamie-Patton Pool that is concerned in the present litigation.

The original unitization agreement of 1948 was made official by order of the Commission of November 8, 1948, so as to embrace lands in sixteen sections in Lafayette County. The unit was enlarged by order of the Commission of April 21, 1950, so as to include

[1]The Act No. 105 of 1939 has been amended several times: see Act No. 305 of 1941; Act No. 134 of 1951; Act No. 258 of 1957; Act No. 401 of 1957; Act No. 536 of 1963; and Act No. 41 of 1965.

[2]Ark. Stat. Ann. § 53-109 (1947) has this definition: " 'Oil' shall mean crude petroleum oil, and other hydro-carbons, . . . 'Pool' shall mean an underground reservoir containing a common accumulation of crude petroleum oil or natural gas or both. Each zone of a general structure which is completely separated from any other zone in the structure is covered by the term 'pool' as used herein."

lands in two additional sections of Lafayette County, and also one section in Columbia County. On July 20, 1960, the unitized area was further enlarged by the Commission's order to include additional lands in Lafayette County;[3] and on August 30, 1963, the unitized area was further enlarged by the Commission so as to include additional lands;[3] so that the McKamie-Patton Pool now embraces several thousand acres.

The present appellants filed a petition with the Commission praying that the northwest 13.8 acres[4] in the NW¼ NW¼, Sec. 34, Twp. 17 S., R. 23 W., in Columbia County, should be added to the McKamie-Patton Pool; and the Commission, by order of January 23, 1964, denied the said application. The petitioners also requested that they be allowed to drill a well for oil and gas on their said lands, with the location to be 330 feet south of their north line, and 330 feet east of their west line; and this request for a drilling permit was likewise disallowed. Thereupon, the appellants filed the present suit in the Columbia Chancery Court, praying, *inter alia*:

" . . . that this court review the orders of the Arkansas Oil and Gas Commission set forth above and after such review enter its mandatory injunction requiring the Arkansas Oil & Gas Commission to issue an order extending the McKamie-Patton Unit to include the 14.4 acres of the NW¼ of the NW¼ of Section 34, Township 17 South, Range 23 West as shown on the attached plat in the McKamie-Patton Unit on a just and reasonable basis and assign to said tract its just and equitable share of the total production from the McKamie-Patton Unit; or in the alternative only that this court issue its mandatory injunction to require the Arkansas Oil and Gas Commission to enter its order . . . authorizing the drilling of a well to the Reynolds Member

[3] These orders of 1960 and 1963 will be subsequently mentioned in some detail.

[4] In some places the acreage is referred to as 14.4 acres. We use the figures indiscriminately.

of the Smackover Lime at the location prayed for
. . . ''

The evidence was heard by the Chancery Court *ore tenus*; and both sides presented excellent trial briefs which are a portion of the transcript before us. The appellants introduced evidence, which stands uncontradicted, to the following effect:

(a) Mr. John E. Gaffney, a Consulting Petroleum Geologist whose qualifications were not disputed, testified that he had been familiar with the McKamie-Patton Pool since 1940; that he had made a careful study of all available data on the McKamie-Patton Pool; that the McKamie-Patton Pool had been enlarged by the Commission's orders three times by reason of wells drilled on the south and east sides of the original boundaries of the pool; that the well the appellants desired to drill, to be located 330 feet east and 330 feet south of the McKamie-Patton Pool would, in his opinion, produce oil and gas that is a part of the unitized pool.

(b) Robert C. Turnham, a Consulting Petroleum Engineer whose qualifications were not disputed, testified that he had been familiar with the McKamie-Patton Pool since 1955. We quote a portion of his testimony:

"Q. And what, as a result of this study, can you say with regard to whether or not the Cornelius tract located in the Northwest Quarter of Section 34 is being drained by the wells shown on the plat?

"A. Well, sir, there is no doubt in my mind that the Cornelius tract has been drained by the unit wells.

"Q. Is it being drained, in your opinion, at the present time?

"A. Yes, sir, it is.

"Q. And has been by these wells since they have been productive?

"A. Yes, sir.

"Q. What type of productive zone is there in the area of the Cornelius acreage?

"A. The Cornelius acreage, as named by Mr. Gaffney, shows 16.8 acres underlain by the Smackover Oil zone of an average thickness of 29 feet. It also shows 14.4 acres underlain by the Smackover gas zone of an average thickness of 108 feet.

"Q. Is this a highly productive area?

"A. Yes, sir, very high.

"Q. And this well located 1,650 feet away from the Cornelius acreage, how much has it produced?

"A. In excess of a million two hundred thousand barrels of liquid hydrocarbons.

"Q. And this is the well you have testified has drained hydrocarbons from the Cornelius tract along with the other wells?

"A. Yes, sir.

"Q. What has been the production of gas from this closest well, 1,650 feet away from the Cornelius tract?

"A. It would be an attendant production of approximately twenty-five billion cubic feet.

"Q. And what is the gross value of the condensated gas this well has produced?

"A. Approximately four million seven hundred thousand dollars.

"Q. This is the closest well to the Cornelius tract?

"A. Yes, sir.

"Q. Have you determined by an engineering method the amount of the drainage that the Cornelius tract, the productive area of the Cornelius tract, has suffered?

"A. Yes, sir, the Cornelius tract, to January 9, 1964, has been drained of hydrocarbons valued at approximately $429,000.00.

"Q. And is it still being drained?

"A. Yes, sir, it's still being drained at an approximate monthly income of approximately one thousand dollars.

"Q. And that drainage is continuing at the present time?

"A. Yes, sir.

"Q. Have you made an engineering study to determine the estimated present reserves under the Cornelius tract?

"A. Yes, sir, the estimated future drainage losses that this tract will incur will be approximately $275,000.00.

"Q. And could those underlying liquids and gas be recovered by a well drilled on the Cornelius tract?

"A. Yes, sir, it could."

(c) Edward A. Albares, Director of the Commission, testified that in 1953 the Commission issued a permit to the Seneca Development Company to drill a well (McLendon-Moore Unit No. 1), located 330 feet from the boundary of the McKamie-Patton Pool; that the

well proved to be a producer; and that the acreage was subsequently added to the McKamie-Patton Pool.

The witnesses for the Commission testified that if a permit should be granted the appellants and they drilled at their desired location, it would be a very expensive well to drill; that such well would reduce the pressure in the McKamie-Patton Pool and would damage the entire McKamie-Patton Pool.

Thus we have before us a case where the uncontradicted evidence shows that large amounts of oil and gas have been drained from the appellants' property and are still being drained, and will continue to be drained at the rate of about $1,000.00 a month, and that all of such oil and gas is going for the benefit of those owners of property located in the McKamie-Patton Pool; and yet we have an order of the Commission refusing to take this land in the pool, and likewise refusing to allow these appellants a permit to drill on their lands. Appellants insist, with considerable merit, that their oil and gas rights are being taken from them without just compensation and that they are being denied any opportunity to protect themselves against such taking.[5] We are so impressed by appellants' evidence that we turn now to see the defense of the Commission to appellants' argument.

The Commission insisted before the Chancery Court, and urges here, that neither the Commission nor the Chancery Court had the power to grant the appellants any relief. The Commission insists that in *Dobson* v. *Commission*, 218 Ark. 160, 235 S. W. 2d 33, we held that there was no statute at that time which authorized forced unitization;[6] that in response to that opinion Act

---

[5] Art. II, Sec. 22 of the Arkansas Constitution says: "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

[6] For the benefit of those interested in pursuing further study of the matter, we call attention to an annotation in 37 A.L.R. 2d

No. 134 of 1951 was adopted, which permitted forced unitization when 75% of the working interests and 75% of the royalty interests in the proposed area should agree to such unitization; and that the appellants did not file such a petition with the Commission. In short, the Commission insists that before it, in the first instance, or the Chancery Court, on review, could grant appellants' request to add the 13.8 acres to the McKamie-Patton Pool, that 75% of the working interests and 75% of the royalty interests in the entire McKamie-Patton Pool of several thousand acres would have to join in such request.[7]

By referring to Ark. Stat. Ann. § 53-115 (1947, Supp. 1965) it will be observed that sub-paragraphs C-1 to C-5, inclusive, apply when a petition is filed for the initial unitization of a pool; but we call attention to the language in sub-paragraph C-6, which reads:

" . . . provided that, if the unit operating agreement then in effect with respect to the unit area to which an additional portion of a pool is to be added contains provisions, under the terms of which additions to the unit area may be made the application for such enlargement of the unitized area need only be accompanied by an agreement, executed by persons owning interests in oil and gas under the area to be added to the unit area in numbers sufficient to comply with the requirements of C-2(a), for the inclusion, in accordance with the plan provided in

---

434, entitled: "Validity of compulsory pooling or unitization statute or ordinance requiring owners or lessees of oil and gas lands to develop their holdings as a single drilling unit and the like."

[7]Here is the wording of the Commission's brief in this regard: "If a part of a pool producing oil and gas has been unitized in accordance with the provisions of the amendatory act, and it is proposed that a unitization agreement be made effective as to a larger part of the same pool involved which includes the area already unitized, the proponents of the enlarged unitized area must take exactly the same steps to cause the unitized area to be expanded beyond the limits of the part of the pool already unitized as were required, in the first instance, to unitize the smaller unitized area which is to be included in it."

the unit operating agreement involved, of the additional area to the unit area then existing.''

We consider this quoted portion of the statute to be applicable here. As previously mentioned, the Commission, in 1960 and again in 1963, enlarged the area of the McKamie-Patton Pool. In each instance the petition for enlargement was made only by the owners of the working interests and the royalty interests *in the area sought to be added*; and the Commission held the petition to be sufficient in each instance, because in both the 1960 order and the 1963 order, the Commission specifically found and stated '' . . . that the unit operating agreement in effect at the time of the filing of the petition hereinbefore mentioned with respect to said unitized area contains provisions under the terms of which additions to the unit area may be made.'' Thus, the Commission added additional acreage to the McKamie-Patton Pool in 1960 and again in 1963, upon the application of the working interests and the royalty interests *in the area sought to be added to the McKamie-Patton Pool,* and did not require the working interests and the royalty interests in the previously existing pool to join in such application. Evidently the Commission in 1960 and in 1963 proceeded under the proviso language of subparagraph C-6; and the Commission should have so proceeded in the case at bar.

The Commission insists that the appellants have not complied with all of the requirements for the adding of their 13.8 acres. Of course, when the Commission grants the petition and adds the 13.8 acres of the appellants to the McKamie-Patton Pool, then the appellants must contemporaneously satisfy the same requirements that were made of the owners of the acreages added by the 1960 order and the 1963 order of the Commission.

Finally, the Commission insists that the appellants are not entitled to any relief because they failed to prove that they were the owners of the 13.8 acres sought to be added. We find no merit in this contention. The answer

of the Commission filed in the Chancery Court was merely a general denial. The Commission did not deny relief to these appellants because of any supposed absence of title, and we hold that the appellants proved a sufficient title to justify the relief which they sought. It was shown that in January 1923 R. R. Cornelius received a deed from the Commissioner in Chancery to the lands here involved; that R. R. Cornelius conveyed all the minerals to his wife; that she conveyed the minerals to the appellants herein (with the exception of Medlock Harbison); and that Mrs. Cornelius' grantees, as owners of the mineral interest, have executed an oil and gas lease to Medlock Harbison, who is one of the appellants with them.

In a suit like this, to add acreage to a unitized pool, the petitioners do not have to trace their title from the sovereignty of the soil unless such is specifically demanded by pleadings. Here, the appellants and their predecessors in title have owned these minerals since 1923; and we hold that they have shown sufficient title in the minerals to require the Commission to either take the 13.8 acres into the McKamie-Patton Pool or to grant these appellants a permit to drill a well on their lands, as they requested. The prayer for drilling the well was in the alternative only. We hold that the petitioners are entitled to have the 13.8 acres made a part of the McKamie-Patton Pool.

Therefore, the decree of the Chancery Court is reversed and the cause remanded, with directions to issue an order to the Commission to proceed forthwith to add the 13.8 acres of the appellants to the McKamie-Patton Pool, and to assign a tract factor to the said lands, upon the execution by appellants of the proper administrative forms.

BLAND, J., not participating.