## W. J. BUDD *v.* ETHYL CORPORATION ET AL

5-5681                                                474 S.W. 2d 411

Opinion delivered December 20, 1971
[Rehearing denied January 24, 1972.]

*Chambers & Chambers*, for appellant.

*Anderson & Crumpler* and *Baker & Botts,* for appellees.

GEORGE ROSE SMITH, Justice. This case involves a salt-water recycling operation by which the appellees are removing salt water from the earth, extracting certain valuable minerals therefrom, and then returning the salt water to the earth. The appellant, as the owner of a mineral interest and a fractional leasehold interest in the vicinity, brought this suit to require the appellees to account to him for his proportionate share of the profits accruing from the recycling process. This appeal is from an order sustaining a demurrer to the appellant's complaint and dismissing it. The question is whether the complaint states a cause of action.

The complaint describes the appellees' recycling operation in substance as follows: The appellees have oil-gas-and-mineral leases upon a compact block of about 16,000 acres of land. They have a number of input wells in what is roughly a circle near the outer edge of the block. They have a number of output wells within that circle. The appellees withdraw salt water from the inner wells, extract therefrom valuable minerals (one of which, according to the briefs, is bromine), and then forcible inject the sale water into the input wells, which presumably facilitates the further withdrawal of salt water from the output wells.

The appellant asserts the invasion of two separate property interests, which must be discussed separately.

First, the appellant owns an undivided one thirty-sixth interest in the minerals in 240 acres lying next to, but outside of, the appellees' 16,000-acre block. The appellees do not have a lease upon the 240 acres in question. The appellant asserts that the recycling operation is actually draining salt water from the 240 acres and that the appellees should be made to account to him for his share of the minerals that are being extracted from the salt water.

That argument is refuted by the law of capture, which we hold to be applicable in this situation. That

law was stated in our early case of *Osborn* v. *Ark. Territorial Oil & Gas Co.*, 103 Ark. 175, 146 S. W. 122 (1912): "Petroleum, gas and oil are substances of a peculiar character. * * * They belong to the owner of land, and are part of it so long as they are part of it or in it or subject to his control; but when they escape and go into other land or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own land and taps a deposit of oil or gas extending under his neighbor's field, so that it comes into his well, it becomes his property." Later cases are to the same effect.

We do not agree with the appellant's insistence that the law of capture was completely nullified by the statute which permits the Oil and Gas Commission to bring about compulsory unitization in oil and gas fields. Ark. Stat. Ann. § 53-115 (b) (Repl. 1971). Of course the rule of capture does not apply in fact situations where the Commission's power to order unitization has actually been exercised. See *Cornelius* v. *Ark. Oil & Gas Commn.*, 240 Ark. 791, 402 S. W. 2d 402 (1966). But there has been no unitization with respect to the 240-acre tract in which the appellant owns an undivided mineral interest; and furthermore, we find no authority in the Oil and Gas Commission to order the unitization of saltwater operations that have no bearing upon the extraction or conservation of oil or gas. It follows that the law of capture prevents the appellant from maintaining his first asserted cause of action.

Secondly, the appellant demands an accounting with respect to a 40-acre tract, lying inside the appellees' circle of input wells, upon which the appellant holds an undivided one-tenth leasehold interest (that being the lessee's interest in an oil-gas-and-mineral lease). The appellees own all the rest of that 40-acre tract, comprising the fee simple and the remaining nine-tenths of the leasehold. The appellant again asserts a right to his proportionate part of the profits accruing from the recycling operation.

We think the chancellor was right in rejecting that contention. Here the issue turns upon the limited nature

of a lessee's property rights, prior to his attainment of production. Quoting again from the *Osborn* case, *supra*: "A gas lease, such as is involved in this case, is a contract granting to the lessee the right to explore the land and to produce therefrom the gas therein discovered. It is not a present sale or transfer of title to the gas, but, on account of its vagrant nature, the gas does not become actually owned until actually possessed. As is said in the case of *Williamson v. Jones,* 39 W. Va. 231: 'The title is dependent on finding the gas by the purchaser in a limited time,' and is inchoate." That thought was echoed in *Pasteur v. Niswanger,* 226 Ark. 486, 290 S. W. 2d 852 (1956): "Our court has held that an oil and gas lease conveys an interest and easement in land itself, but no title passes until the oil and gas are reduced to possession."

Attached to the complaint is a copy of the lease under which the appellant asserts a one-tenth leasehold interest in 40 acres. That lease provides that the "Lessee shall have the right to drill . . . and operate a well or wells for the production of salt water . . . or for the injection of salt water produced by lessee from lands covered by this lease." Thus the appellant has the same right to produce and recycle salt water as that now being exercised by the appellees. The complaint alleges, however, that the appellant's interest is so small that the cost of drilling salt-water wells would be prohibitive. It is on that basis that he asserts a right to share in the profits of the appellees' operations.

In holding the appellant's argument to be unsound we are influenced by two considerations. One: The appellant's claim to the minerals in solution in the salt water is merely inchoate, as we pointed out in the *Osborn* case. Thus there is no trespass upon a vested existing property right, as is the case when a tenant in common of the mineral ownership drills a producing oil or gas well without the consent of his cotenant. In that situation accountability seems to be the rule. *Earp v. Mid-Continent Petroleum Corp.,* 167 Okl. 86, 27 P. 2d 855, 91 A. L. R. 188 (1933); *Rosse v. Northern Pump Co.,* 353 S. W. 2d 287 (Tex. Civ. App. 1962); *Torgeson v.*

*Connelly,* Wyo., 348 P. 2d 63 (1959). There, however, the law finds a direct infringement of an existing vested property right.

Two: The appellant's standing in a court of equity is decidedly weak, in that he seeks to reap the profits of the recycling venture without having volunteered to incur any of its risks. The complaint alleges that the appellees are operating about 10 input wells and about 25 output wells, all of which are apparently at least 4,000 feet deep. We know judicially that great sums of money were invested in those 35 wells. Yet the appellant's complaint makes no assertion that he volunteered to share the risk of a recycling project that might have been a financial disaster. Had he refused an offer to participate in the venture, he would not have had any standing in equity to insist upon a share in the profits. *Tide Water Associated Oil Co.* v. *Stott,* 5th Cir., 159 F. 2d 174 (1946); *California Co.* v. *Britt,* 247 Miss. 718, 154 So. 2d 144 (1963). We cannot say that the silence of his complaint upon this point, when an affirmative position is demanded, puts him in any better position than that of the plaintiffs in the *Stott* and *Britt* cases. Of course our own case of *Ashland Oil & Refining Co.* v. *Bond,* 222 Ark. 696, 263 S. W. 2d 74 (1953), is clearly distinguishable, for there the two colessees agreed to rework the well together and so joined in risking the consequences of failure. That was precisely the risk that the appellant was apparently unwilling to take in the case at bar.

Affirmed.

Byrd, J., dissents.

CONLEY BYRD, Justice, dissenting. I cannot distinguish between unitization by law and unitization in fact. The appellees here have done in fact with a bromine operation that which is authorized by law in oil and gas operations. When artificial force or pressure, as distinguished from the forces of nature, is used to recycle salt water or any other solution through the sands of any formation to remove the minerals therefrom a trespass

is as surely committed as when artificial wind is created to cause my neighbor's pecans to fall on my land.

Furthermore, if I understand the majority opinion correctly, the appellant can proposition the appellees to join with him in a bromine operation and upon their refusal he can install as large a pump as man can devise and remove by capture all the salt water in the total basin including that generated by appellees' recycling operation. Of course, this is contrary to what we held in *Dodson* v. *Oil and Gas Commission*, 218 Ark. 160, 235 S. W. 2d 33 (1950), because we there limited Dodson to the recovery of the 250 barrels of oil per day he had been obtaining from his oil well before the recycling process was commenced even though the well was producing 350 barrels per day after the recycling was put in operation.

I agree with so much of the opinion as deals with the property outside of recycling area.