**J. M. YOUNG, Plaintiff-Appellee, Cross-Appellant,**

**v.**

**ETHYL CORPORATION, Defendant-Appellant, Cross-Appellee.**

**Nos. 77–1807, 77–1829.**

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1978.

Decided Aug. 8, 1978.

Rehearing and Rehearing En Banc Denied Sept. 8, 1978.

Robert J. Malinak, Baker & Botts, Houston, Tex., for appellant; Paul C. Crumpler, Anderson & Crumpler, Magnolia, Ark., on the brief.

Robert J. Moffatt, Shreveport, La., and Melvin T. Chambers, Magnolia, Ark., for appellee; Rodney T. Chambers, Magnolia, Ark., on the brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge, and VAN PELT, Senior District Judge.*

VAN OOSTERHOUT, Senior Circuit Judge.

The primary issue presented by Ethyl Corporation's timely appeal is whether under the facts of this case the trial court applied a proper measure of damages. Plaintiff Young brought this action in federal court in 1972. He alleged Ethyl Corporation (Ethyl)[1] as a result of their brine recovery operation in the Kerlin Field in Arkansas committed an actionable trespass by taking brine from 6,000 feet below the surface of his land. Jurisdiction is based on diversity of citizenship.

The issue of liability was tried before Judge Harris who entered a final judgment dismissing the complaint for reasons stated in his memorandum opinion reported at 382 F.Supp. 769 (W.D.Ark.1974). Judge Harris's determination was based on the view that the Arkansas law of capture applied and that under Arkansas law of capture Ethyl Corporation had a right to the brine underneath plaintiff's land and that plaintiff had failed to prove defendant had infringed upon any protected rights. Upon Young's appeal this court reversed the judgment of dismissal for reasons stated in *Young v. Ethyl Corporation*, 521 F.2d 771 (8th Cir. 1975). The case was remanded for a determination of damages. We are bound by such decision on the liability issue. Ethyl does not deny it is liable for damages. It does insist vigorously that the appropriate Arkansas measure of damages was not applied. The issue of damages was tried before Judge Williams without a jury. The transcript consists of 2358 pages. Also numerous exhibits were introduced.

Judge Williams in an opinion dated February 23, 1977, not reported, awarded Young $1,119,922.24 with interest from date of judgment at the rate of 6% per annum, and requires defendant to pay 169.1/15,040ths of the profits subsequent to July 1, 1976, as long as the Kerlin Field operation is continued. On September 13, 1977, the court denied defendant's Rule 59 motion and motion for a new trial. The defendant has appealed from the February 23, 1977, judgment and from the September 13, 1977, denial of his motion for a new trial and amendment of judgment.

As grounds for reversal Ethyl urges: (1) error in refusing to follow applicable Arkansas law in awarding damages; (2) the unitization of Kerlin Brine Field as contrary to facts and law; (3) even if the trial court was correct in its theory of damages, material errors were committed in the application thereof; (4) the trial court abused its discretion in refusing to amend its judgment to correct obvious mathematical errors.

By timely cross appeal Young urges: (1) the court erred in determining that the defendant's acts of trespass were unintentional and in good faith; (2) plaintiff is entitled to the value of commingled assets; (3) plaintiff is entitled to additional interest.

For the reasons hereinafter stated, we hold that the court applied an improper measure of damages under Arkansas law to the facts of this case and reverse and remand. We affirm on the cross appeal except that we leave the issue of interest due on the judgment obtained and the propriety of allowing prejudgment interest open for determination by the trial court on the basis of Arkansas law.

In our prior opinion we agreed with the trial court that Arkansas law applies. We adhere to such view.

Many of the pertinent facts are set out in the prior reported opinions of the trial court and this court. In the case now before us the court found on the basis of the parties'

* The Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska, sitting by designation.

1. Great Lakes Chemical Corporation, Calvert Exploration Company and Bromet Company were also named defendants. The action against such defendants was dismissed and no appeal from such dismissal is before us.

stipulation that the Kerlin Field consist of 15,040 acres and that Young owns 169.1 acres in the field. We agree with such finding.

About 90% of the land in the field was leased or owned by Ethyl. Attempts to lease or acquire plaintiff's land were unsuccessful. Some 3,000 leases were involved. Many of the leases were in the record. Most of the leases provided for a royalty of ⅛th of the value of the brine at the wellhead.

While the issue of whether the trespass was innocent and in good faith is an issue raised by the cross appeal, we consider it necessary to go into such issue here as it has a bearing on the damage award. The trial court properly held that the burden of proving good faith was upon Ethyl and that it has met such burden. We find there is substantial evidence to support such finding. Ethyl received advice from Texas and Arkansas attorneys that under Arkansas law the law of capture applied. It further determined that Ethyl had received permission from the Arkansas Oil & Gas Commission for the drilling location and operation of its injection and production wells. The opinion of Judge Harris, an able and experienced Arkansas Judge heretofore referred to, was found by Judge Williams to lend strong support to the present finding that the trespass was in good faith. The trial court specifically determined that the damages were to be determined on the basis of good faith trespass. We agree.

The trial court in its opinion stated that plaintiff contends he is entitled to the value of the bromine. The plaintiff contends that the total value of the bromine or sulphur removed from his land is $6,584,134. The trial court stated:

> While Ethyl forcefully urges that we are dealing with salt water or brine and its market value and royalty value, this Court specifically holds that we are dealing with minerals, bromine, ethylene dibromide, vinyl bromine and sulphur.

Ethyl contends that its technical knowledge and facilities for producing the end products from the brine belong exclusively to it. The trial court in its opinion states: "Mr. Young could hardly be expected to provide himself with a $45,000,000 facility and the expensive operation to process the brine to its end products." Plaintiff is in excess of eighty-four years of age and his background has been limited to farming. He has had no training in digging deep wells for brine or building highly technical plants for converting brine into sophisticated chemical products. Plaintiff made no contribution to the cost of digging the wells or erecting and operating the plants that produced the end products. It is extremely unlikely that any outside person would be interested in producing brine on plaintiff's limited acreage surrounded by an existing field. We find no substantial evidence that the plaintiff could have properly operated and processed the brine on his land or leased it to others on a profitable basis. Plaintiff's own witnesses testified that it would have been inconceivable and a foolhardy venture for plaintiff to dig or operate a deep well on his 169.1 acre tract for the production of brine.

While plaintiff in his complaint sought the value of the bromine, the court in fixing damages awarded the value of the end products of the brine, less the cost of production, in the proportion that 169.1 acres bears to the 15,040 acre field. The court found that the entire 15,040 acre field produced the following end products:

| | |
|---|---:|
| Elemental bromine worth | $ 4,540,596 |
| Ethylene dibromide worth | 154,394,476 |
| Vinyl bromine worth | 14,087,900 |
| Sulphur worth | 1,605,467 |

The court determined that the cost of such production was $75,021,000 which resulted in a profit of $6,622.84 per acre, making the profit on plaintiff's 169.1 acres $1,119,922.24 for which plaintiff was granted judgment. It further determined that Ethyl should pay plaintiff 169.1/15,040ths of its net profits as long as the Kerlin Field was in operation.

We find no support in the Arkansas cases or elsewhere for allowing plaintiff, under the facts of this case, a share of the profits of end products produced from the brine in the proportion which plaintiff's

land bears to the entire field. Section 52–201, Ark.Stat.Annot., as amended, in pertinent part provides:

> The word "mineral" as used herein shall include oil, gas, asphalt, coal, iron, zinc, lead, cinnabar, bauxite, and salt water whose naturally dissolved components (solutes) are used as a source of raw materials for bromine and other products derived therefrom in bromine production.

Thus under Arkansas law salt water is a mineral and it is reasonable to treat damages for taking of salt water in the same manner as the taking of other minerals such as coal. Judge Miller in *National Lead Co. v. Magnet Cove Barium Corp.*, 231 F.Supp. 208, 221 (W.D.Ark.1964), reviewing Arkansas and outside authorities, holds:

> The court is also of the opinion that the proper measure of damages is under the Arkansas law the in-place value for the ore removed and disturbed because of an innocent or non-wilful trespass. Within the general principle of the in-place value measure of damages, the court must attempt to place the injured party in such a position as it would have been had not the injury occurred. Of course, this attempt to make the injured party whole is the underlying basis for compensatory damages. As to a landowner who has not the opportunity nor the equipment to develop minerals, the amount for which he can lease them, or royalty value, is the generally accepted measure of damages as to him for an innocent trespass and conversion of minerals.

In *Parnell, Inc. v. Giller*, 237 Ark. 267, 372 S.W.2d 627 (1963), which involved salt water, the court held:

> The royalty payable to the lessor is computed upon the market value of the salt water at the well.

In *Ward v. Spadra Coal Co.*, 168 Ark. 853, 272 S.W. 353, 355 (1925), the court determined that the measure of damages to the injured party whose coal was taken as a result of a good faith trespass was the in-place value of the mineral. The court goes on to say:

The evidence in the record tends to show that the royalty usually paid in that locality for mining coal where the machinery and equipment was not considered was 10 cents for slack coal, and 15 cents for hard coal. This evidence is not disputed and should have been taken by the chancellor in fixing the value of the coal taken.

As heretofore pointed out, there are a considerable number of leases in the record, most of which reflect a royalty of ⅛th of the market value of the salt water at the wellhead. The plaintiff in 1965 executed a lease, which apparently has terminated, to a party not here involved, on the land here in dispute providing for royalty on minerals including salt water, of ⅛th of the value of the brine extracted from the land at the wellhead. The court determined that the value of the brine at the wellhead was 2 to 5 cents a barrel. A 5¢ market value would provide a royalty of less than 1 cent a barrel on the 7,612,000 barrels of salt water the court found had been appropriated, which would establish damages considerably less than $76,000.

There is authority in Arkansas and elsewhere that the in-place value of the mineral, less the cost of bringing it to the wellhead or the surface, is the appropriate measure of damages. Such measure would likewise fall far short of the damages awarded. *National Lead* and Arkansas Supreme Court cases indicate that if the taking is wilful and in bad faith the measure of damages is the value at the wellhead without deducting any cost of bringing the mineral to the surface. Thus even under the bad faith rule using the maximum surface value of 5 cents per barrel, the total damages would approximate $380,000.

*Burbridge v. Bradley Lumber Co.*, 218 Ark. 897, 239 S.W.2d 285 (1951), relied upon by the plaintiff, is clearly distinguishable. In that case timber on the surface was appropriated and cut into railroad ties. The court determined that no great skill or capital was needed in converting the timber to ties and that plaintiff would have been able to provide such service himself. Such is certainly not the situation under the facts of this case.

As heretofore set out, plaintiff provided neither capital nor skill needed to produce the end products upon which the court based its award.

Moreover, there is no basis in Arkansas law to compel unitization of the field. In *Dobson v. Arkansas Oil & Gas Commission,* 218 Ark. 897, 235 S.W.2d 33, 36 (Ark.1950), the court held:

> We think it clear that the legislature has not yet undertaken to empower the Commission to direct the unitization of this entire field.

> Nor may the courts achieve this result without statutory authority.

> \* \* \* \* \* \*

We conclude that at present the goal of field-wide unitization can be reached only by voluntary co-operation.

In *Budd v. Ethyl Corp.,* 251 Ark. 639, 474 S.W.2d 411, 413 (1971), the court held:

> But there has been no unitization with respect to the 240-acre tract in which the appellant owns an undivided mineral interest; and furthermore, we find no authority in the Oil and Gas Commission to order the unitization of salt-water operations that have no bearing upon the extraction or conservation of oil or gas.

We are convinced that the court, upon the basis of Arkansas law, applied an inappropriate measure of damages in awarding the judgment. We leave the matter open for the trial court to determine on the basis of Arkansas law whether the royalties value or the value of the salt water at the wellhead, less the cost of bringing it to the wellhead, is the proper measure of damages. Under either of such measures of damage, the judgment award here is grossly excessive. We also leave open the question of whether any brine has been removed from plaintiff's land since July 1, 1976. If so, the damages therefrom can be left open for determination on the basis of an appropriate measure of damages.

What has heretofore been said disposes of defendant's appeal and hence it is unnecessary to consider the additional points raised. On plaintiff's appeal, the judgment is reversed and the case is remanded for further proceedings not inconsistent with the views expressed in this opinion.

With respect to the cross appeal, for reasons heretofore stated, we affirm the court's holding that the taking was in good faith and reject the contention that plaintiff is entitled to a proportionate share of the ultimate products made from the salt water. We leave open the issue of prejudgment and postjudgment interest that should be awarded upon any judgment entered in accordance with the Arkansas law.

Reversed and remanded upon defendant's appeal; affirmed on plaintiff's cross appeal except that the interest issue is left open for determination under Arkansas law upon the amount of damages awarded.