25 So.2d 906

**RUDNICK et al. v. UNION PRODUCING CO. et al.**

No. 37741.

March 18, 1946.

Rehearing Denied April 22, 1946.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson and F. Leonard Hargrove, all of Shreveport, for appellees.

KENNON, Justice.

This suit grows out of the following provisions of an oil and gas lease dated July 6, 1926, presently owned by the Union Producing Company:

" * * * as *additional consideration,* lessee agrees that if *any* well drilled on the above described property makes or produces not less than fifty (50) and not over one hundred (100) barrels of oil per day, to pay to lessor four thousand dollars ($4,000.- 00) ; if *any* well drilled on said property makes or produces over one hundred (100) barrels and not over two hundred fifty (250) barrels of oil per day, to pay to lessor ten thousand dollars ($10,000.00) ; if *any* well drilled on said property makes or produces over two hundred fifty (250) barrels of oil per day, to pay lessors twenty thousand dollars ($20,000.00) ; to be more explicit whichever of the above sized well(s) should come in *first,* that *special size well* shall set the money consideration to be paid * * *." (Italics ours.)

The plaintiffs, the owners of a three-fourths interest in the leased property, are demanding the cancellation of the lease, insofar as it affects their interest, for failure of the lessee to pay "additional consideration" under the above quoted provisions, by virtue of the completion of a well on July 22, 1938 (the second well), which produced daily 50 to 100 barrels of oil and which was capable of producing more than 250 barrels of oil daily. In the event the lease shall be kept in force, the plaintiffs demand, in the alternative, $15,000 additional consideration, but, in this Court, they only urged this claim to the extent of $3,000 (3/4ths of the $4,000 provided in the lease, upon the completion of a 50 to 100 barrel well).

The defendants contended below, and here, that, since the first well brought in under the lease, which was completed on September 18, 1927, produced less than fifty (50) barrels per day, the lessor was relieved from payment of additional consideration under the above quoted provisions of the lease, basing their argument upon the following clause: " * * * to be more explicit whichever of the above sized well(s) should come in first, that special size well shall set the money consideration to be paid".

The district judge held with the defendants and dismissed the suit. Plaintiffs appealed. The defendants answered, asking for the affirmation of the judgment and prayed, in the alternative, should it be held that the judgment of the district court is

erroneous, the case should be remanded for the purpose of having the lower court pass on the defendants' pleas of prescription and estoppel, or, if such pleas were passed on directly by this Court, they should be sustained; and, with an additional prayer that, in any event, the lease be not cancelled.

The facts are not in contest. On September 18, 1927, a producing oil well was completed on the leased lands (through the deepening of an old nonproducing well), which was capable of producing more than 50 barrels but not as much as 100 barrels of oil per day. This well never produced as much as 50 barrels per day. On July 22, 1938, the Union Producing Company completed a second well on the land, which always produced more than 50 but less than 100 barrels, and was always capable of producing more than 250 barrels of oil per day. The plaintiffs concede that oil actually produced from and not the capacity of the well determines its character under the above provisions of the lease.

Our interpretation of the lease is that an additional consideration became due by virtue of the completion of the July 22, 1938 well, which, according to the stipulations "produced more than fifty (50) but less than one hundred (100) barrels" of oil per day. We draw this conclusion from the above quoted provisions of the lease, which provide " * * * that if *any* well drilled on the above described property makes or produces not less than fifty (50) and not over one hundred (100) barrels of oil per day (lessee agrees) to pay to lessor four thousand dollars ($4,000.00); if *any* well drilled on said property makes or produces over one hundred (100) barrels and not over two hundred fifty (250) barrels of oil per day, to pay to lessor ten thousand dollars ($10,000.00); if *any* well drilled on said property makes or produces over two hundred fifty (250) barrels of oil per day, to pay lessors twenty thousand ($20,000.00) dollars * * * ". We conclude that the above quoted clause provided for additional consideration in the event *any* well drilled on the property resulted in a production falling within one of the three categories stated and that the *amount* of the additional price to be paid depended upon *which* of the "above sized" wells should come in first. We think that the explanation " * * * to be more explicit whichever of *the above sized well(s)* should come in first, that *special size well* shall set the money consideration to be paid * * * " included in the lease, had the effect of limiting the "well" clause to a single payment, the amount of this single payment to be determined by the size, not of the first well, but, as the provision reads, by the first of the "above sized" wells. The phrase "of the above sized well(s)" excludes the 1927 well from being considered as the "first" well under the provisions in contest as it was not—by admitted stipulation—one of the *"above sized"* wells. When, on July 22, 1938, a well did come in of the size enumerated in the first of the three categories listed, the capacity of that well fixed the amount due and the lessee was bound to pay the plaintiffs their three-fourths of $4,000 out of 7/32ds production.

The plaintiffs have prayed for the cancellation of the lease for failure to pay this additional consideration. This is not a

case where there has been an arbitrary failure on the part of the lessee to pay the stipulated rents as they became due. Plaintiffs' suit demanding the cancellation of the lease had an alternative demand for $15,000. The facts that the defendants were awarded judgment in the district court and that plaintiffs' judgment here is for only one-fifth the amount sued for are plain indications that it was not unreasonable for the lessee to await judicial interpretation of plaintiffs' demands.

In Louisiana, the right to dissolve a lease is subject to judicial control according to the circumstances. Brewer v. Forest Gravel Company, Inc., 172 La. 828, 135 So. 372, and cases there cited. In this case there were grounds for honest doubt as to the rights of the parties. This Court has not, and will not, penalize a litigant lessee by dissolving a lease held technically in default when there is a bona fide defense. The plaintiffs request for cancellation should, therefore, be denied.

Since we hold the lease to be in force, it becomes unnecessary to pass separately on defendant's plea that plaintiffs are estopped from attacking same.

In bar of the plaintiffs' claim for $3,000, defendants have pleaded the prescription of three years, and asked that the case be remanded to permit the district court to pass on their pleas. Under our interpretation of the lease, no purpose would be served by remanding the case. No question of fact is involved. The "additional consideration" provided in the lease is in the nature of a promise to pay a definite amount on the happening of one of the contingencies listed and falls within the ten year prescription under article 3544 of the Revised Civil Code. The right accrued in 1938. This suit was filed in 1942 and the ten year prescriptive period has not accrued.

For the reasons assigned, the judgment of the district court is set aside and judgment is now rendered in favor of the plaintiffs in the proportion of one-ninth each to plaintiffs, Mrs. Fannie J. Rudnick, Mrs. Leah J. Manheim, Mrs. Flora J. Block, Mrs. Joseph J. Harris, Mrs. Madeline J. Meyer and Mrs. Carrie J. Marx, one-twelfth each to F. M. Hood and E. C. Ferguson, and one-sixth to North Central Texas Oil Company, Inc., and against the defendant, Union Producing Company, in the sum of Three Thousand ($3,000) Dollars, together with 5% interest thereon from judicial demand until paid; all other demands of the plaintiff are rejected. The cost of both courts are to be paid by the defendant, Union Producing Company.