**MIDSTATES OIL CORP. v. WALLER et al.**

**WALLER et al. v. MIDSTATES OIL CORP.**

No. 14436.

United States Court of Appeals Fifth Circuit.

Aug. 31, 1953.

Clarence L. Yancey and Sidney M. Cook, Shreveport, La., for appellant and appellee.

William H. Bronson and T. Haller Jackson, Jr., Shreveport, La., Tucker, Bronson & Martin, Shreveport, La., of counsel, for appellees and appellants.

Before HOLMES, BORAH and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This suit involves a provision in an oil and gas lease and calls for the interpretation of an overriding royalty clause and a unitization and pressure maintenance agreement. The plaintiff lessee, Midstates Oil Corporation, has appealed from a judgment on the pleadings entered by the District Court holding that the defendant lessors, Paul Dale Waller, et al., are entitled to an overriding royalty and ordering an accounting. The defendants have also appealed from that portion of the judgment which rejected their demands for attorneys' fees, cancellation of the lease, and for the full amount of interest claimed.

The material and undisputed facts set forth in the pleadings are these. On July 20, 1942, the defendants or their authors in title executed an oil and gas lease to the plaintiff on land in the Haynesville Oil Field described as the Northeast Quarter and the East Half of the Northwest Quarter of Section Three, Township 23 North, Range Eight West, Claiborne Parish, Louisiana. By the terms of the lease the lessors reserved the usual ⅛th royalty and further reserved ⅛th of ⅞ths of all oil which may be produced, saved and marketed until such time as there shall have been delivered to lessors oil of the total market value of $150 for each acre of the Northeast Quarter of Section Three, and $250 for each acre of the East Half of the Northwest Quarter of Section Three. The lease further provides that upon payment of these amounts out of oil the reservation shall be modified and become an overriding royalty of ¹⁄₁₆th of ⅞ths of all oil which may be produced, saved and marketed, provided, however, that said overriding royalty as to any particular unit, "shall cease and ipso facto without further act, pass to and become absolutely vested in Lessee when the well, or wells, on any such particular unit ceases to flow by natural means, it being understood that oil produced artificially whether it be by conventional pumping method, or by recycling and repressuring, does not constitute natural means." In compliance with the terms of the lease wells were drilled within the year and oil production by natural means was obtained.

On January 10, 1944, all interested parties herein including the plaintiff and defendants executed an agreement known as the Haynesville Unitization and Pressure Maintenance Agreement. This agreement provided among other things for recycling or repressuring[1] the unit area in the Haynesville Field by "killing" a number of producing wells and using those wells to inject compressed gas and water into the oil producing strata for the purpose of maintaining the bottom hole pressure. In order to perfect this objective it was necessary to make some provision in the pressure maintenance agreement in respect to any production units in the unit area affected by overriding or excess royalties. Accordingly, it was provided in Article IX of the agreement that said excess royalties shall either be adjusted by mutual agreement or reduced in the manner therein pre-

[1] "The Haynesville Oil Field was ascertained to be composed of one common pool of oil underlying several townships of land * * * that in *competitive operations* many wells were required to be drilled; much gas was being flared and wasted; the wells would be depleted at an earlier date due to the loss of gas pressure, therefore, the operators conceived the idea of unitizing the field, stop competitive drilling, erect a gasoline plant to process the gas, and remove therefrom its saleable contents, and to inject the residue gas back into the oil producing strata and thereby maintain the bottom hole pressure." Waller v. Midstates Oil Corporation, 218 La. 179, 48 So.2d 648, 653.

scribed [2] in the event the net revenues to the working interest, after provision for excess royalties, will be exceeded by operating expenses. The agreement specifically provides that this method of adjustment or reduction is to be applied in the procedural manner prescribed notwithstanding anything anywhere contained in the agreement, or in any lease, assignment or other contract to the contrary. Here it is conceded that neither the plaintiff nor any one else has ever given defendants or any one of them the requisite notice prescribed in Article IX that the operating expenses exceeded the revenues payable to the operators.

On May 1, 1944, the pressure maintenance agreement went into effect. Thereafter, the Operators Committee, of which plaintiff was a member, "killed" the naturally flowing wells on defendants' lands and began using them as water injection wells. At that time the reserved oil payments of $150 and $250 per acre had not been paid out on the two tracts and plaintiff continued the payout after the wells were converted and until the amounts due thereunder had been liquidated. However, plaintiff refused thereafter to pay defendants an overriding royalty and caused the royalty to be paid to itself. On August 10, 1951, following the termination of certain state court litigation between the same parties and to which we shall subsequently refer, defendants made written demand on the plaintiff for payment of the overriding royalty within sixty days under penalty of forfeiture of the lease. Their demand was not answered by the plaintiff and on October 17, 1951, defendants in a second written demand insisted that plaintiff furnish them with an acknowledged instrument directing the cancellation of the lease on the records in accordance with the provisions of LSA–R.S. 30:102 and advised that in the event plaintiff failed or refused to comply defendants would proceed against plaintiff for a cancellation of the lease, for reason-

---

**2.** Article IX provides in pertinent part:

"In respect of Production Units in the Unit Area affected by royalties or payments in addition to or in excess of the usual one-eighth lease royalty (such additional royalties or payments and such excess royalty over the usual one-eighth lease royalty being herein referred to as Excess Royalties) it is recognized that there may at some time in the future be a time or times when net revenues to the working interest, after provision for such Excess Royalties, will be exceeded by operating expenses, and to eliminate such inequity said Excess Royalties shall either be adjusted by mutual agreement or reduced as hereinafter provided. Therefore, notwithstanding anything anywhere contained in this agreement, or in any lease, assignment or other contract to the contrary, it is agreed that if during any period of ninety consecutive days the net revenues derived from the production allocated to the working interest in any Production Unit or to any part of the working interest in any Production Unit which is subject to any Excess Royalty, after provision for such Excess Royalty, shall be less than the operating expenses payable by the Operator owning such working interest or part thereof in such Production Unit, then the Operators Committee or the Advisory Committee shall give prompt written notice, or cause such notice to be given, of such condition to the parties affected and such parties shall endeavor by mutual agreement equitably to adjust such Excess Royalty to some mutually satisfactory lesser fraction. In default of consummation of such agreement within fifteen days after the date of the aforesaid notice, said Excess Royalty shall ipso facto be and become reduced so that there shall be deducted from each amount which would have been payable thereon except for this provision, a sum equal to the proportionate part of the operating expense payable by the Production Unit affected which would be payable by an operating or working interest of equal size. Such adjustment or reduction shall be effective back to the expiration of said period of ninety consecutive days and shall continue in effect during such time or different times, but only during such time or different times, as the operating expense, as aforesaid, exceeds net revenues for any period or periods of ninety consecutive days. No capital expenditure shall be included in determining operating expense. Net revenues and operating expenses shall be as determined from the books and accounts of the unit operation."

able attorneys' fees and for damages. Without replying, plaintiff instituted this suit in the United States District Court for the Western District of Louisiana.

The complaint filed in the District Court on the ground of diversity of citizenship sought among other things a declaratory judgment decreeing that the overriding royalty stipulated in the lease never came into existence, or if it did, that it terminated when recycling and repressuring became effective. The defendants filed an answer and counterclaim in which among other particulars they alleged facts [3] to show that the case of Waller v. Midstates Oil Corporation, 218 La. 179, 48 So.2d 648, was controlling. The prayer was that the lease be declared null and void as of midnight, October 10, 1951; that plaintiff be ordered to file a complete accounting for $\frac{1}{16}$th of $\frac{7}{8}$ths of the oil from that date and that there be judgment in favor of the defendants for the amount shown by the accounting; that reasonable attorneys' fees be allowed; and for costs. In the alternative and in the event that the court did not cancel the lease it was prayed that defendants be decreed to be entitled to an overriding royalty of $\frac{1}{16}$th of $\frac{7}{8}$ths of the oil allocated to the property under the unitization agreement and that an accounting on that theory be ordered. The plaintiff answered the counterclaim reiterating in substance the position it had taken in the original complaint. The defendants thereupon filed a motion for judgment on the pleadings and the motion was granted. The court below in its reasons for judgment adopted the opinion of the Supreme Court of Louisiana in Waller v. Midstates Oil Corporation, su-

pra, as part of its opinion and held that defendants were entitled to the specified overriding royalty, subject to the provisions of the pressure maintenance agreement and to an accounting on the overriding royalty within ninety days from the date of the judgment. Further, that the lease as amended by the pressure maintenance agreement is valid between the parties; that no attorneys' fees should be allowed; and that defendants were entitled to the unpaid amounts of the royalty payments together with legal interest thereon at the rate of five per cent per annum from the date of entry of judgment until paid.

■ The important question here is whether this case is controlled by the decision of the Supreme Court of Louisiana in Waller v. Midstates Oil Corporation, supra. In that case, involving an identical dispute between the same parties but in respect to different lands, the court in a well reasoned opinion held that the provision of Article IX of the Haynesville Unitization and Pressure Maintenance Agreement was inserted to take the place of the agreement as written in the lease, which provision constituted the agreement with respect to defendants' overriding royalty, and that they were entitled to recover thereunder. The lease clause there involved provided that the overriding royalty "shall cease and ipso facto without further act, pass to and become absolutely vested in Lessee when the well or wells, on any such particular unit ceases to flow without being pumped or produced by other artificial means." That clause and the clause in question here amount to one and the same thing. The only difference—in the two termi-

---

3. The counterclaim recites that "The case of Waller v. Midstates Oil Corporation * * * was a case in which the identical parties, who are defendants in this suit, were plaintiffs and in which the plaintiff herein was defendant * * *. The Oil, Gas and Mineral lease dated May 18, 1942, involved in the litigation referred to * * * was a lease with the identical lessors and lessees as the Oil, Gas and Mineral Lease involved in this litigation dated July 20, 1942 * * * Both of the Oil, Gas and Mineral Leases to which reference is made in the preceding paragraph cover lands situated in the Haynesville Oil Field * * * The Haynesville Unitization and Pressure Maintenance Agreement attached to the complaint * * * is the same Haynesville Unitization and Pressure Maintenance Agreement referred to in the opinion of the Supreme Court of Louisiana * * *."

nating provisions—is that in the instant case production by artificial means is more fully defined than in the State case. In all other respects the facts to all intents and purposes are substantially the same. We agree with the court below that the doctrine announced in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, applies; and that this doctrine requires that we follow the law of Louisiana as declared by its highest court. In this situation we are not under a duty to make a choice for ourselves between alternative constructions as if the courts of the place of the lease contract were silent or uncertain, and we accept as our guide the law declared by the state where the contract was made and was to be executed. Cf. Trainor Co. v. Aetna Casualty Co., 290 U.S. 47, 54, 55, 54 S.Ct. 1, 78 L.Ed. 162; Sim v. Edenborn, 242 U.S. 131, 135, 37 S.Ct. 36, 61 L.Ed. 199. It follows that defendants are entitled to the overriding royalty in question.

■■ This brings us to the question raised by the defendants on their appeal as to whether the lease should be cancelled for failure to pay the overriding royalty, and if so, whether a reasonable attorney's fee should be allowed as provided in LSA–R.S. 30:102. We think there was no error in the holding of the District Court recognizing the validity of the lease and rejecting the defendants' prayer for its cancellation. Under Louisiana law, the right to dissolve a lease is subject to judicial control according to the circumstances. Brewer v. Forest Gravel Company, Inc., 172 La. 823, 135 So. 372. Where, as here, there is a legitimate dispute between the lessors and the lessee relative to a clause in the lease and there are grounds for honest doubt as to the rights of the parties, the Louisiana Supreme Court has declared that it "has not, and will not, penalize a litigant lessee by dissolving a lease held technically in default". Rudnick v. Union Producing Co., 209 La. 943, 25 So. 2d 906, 908.

■ In Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336, it was pointed out that it would be a harsh rule to turn the lessee out because he has made some error in good faith, and the courts will exercise a discretion in such cases. No abuse of discretion is apparent here and the defendants' prayer for cancellation of the lease and attorneys' fees therefore should be, and is, denied.

■ The defendants contend that legal interest at 5 per cent per annum should be granted to them on the various amounts of the overriding royalty from the dates the amounts were wrongfully paid to plaintiff until turned over and paid to defendants. This being a diversity case, the question is controlled by Louisiana law. Phillips Petroleum Co. v. Oldland, 10 Cir., 187 F.2d 780; cf. New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128. Under Louisiana statutes and decisions, defendants are entitled to legal interest on the amounts due by plaintiff from the respective dates on which such amounts were received by plaintiff and for which it is held to account. Article 1938, LSA– C.C. Civil Code of 1870; Pease v. Gatti, 205 La. 949, 18 So.2d 511; DaPonte v. Ogden, 161 La. 378, 108 So. 777; Friede v. Myles Salt Co., La.App., 177 So. 105; cf. Barnhart v. Gulf Refining Company of Louisiana, 159 La. 509, 514, 519, 105 So. 602. We think the court below erred in granting interest from the date of the judgment on the basis of Title 28 U.S.C. A. § 1961. The federal statute has to do with interest on a judgment as such, and not with interest on a debt before it is reduced to judgment, which is what defendants rightly seek here. Cf. New Amsterdam Casualty Co. v. Soileau, supra.

The judgment appealed from is amended to allow legal interest at the rate of 5 per cent per annum from the dates on which the various amounts of the overriding royalty were paid to the plaintiff, and, as amended, it is

Affirmed.