**J. M. YOUNG, Plaintiff,**

v.

**ETHYL CORPORATION et al.,
Defendants.**

**No. ED 72–C–6.**

United States District Court,
W. D. Arkansas,
El Dorado Division.

Sept. 20, 1974.

---

Anderson & Crumpler, Magnolia, Ark., and Baker & Botts, Houston, Tex., for defendants.

Chambers & Chambers, Magnolia, Ark., for plaintiff.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

The plaintiff, J. M. Young, brings this diversity action against the defendants, Ethyl Corporation, Great Lakes Chemical Corporation, Calvert Exploration Company, and Bromet Company, seeking an injunction against the defendants from continuing operation of a bromine plant located immediately South of the plaintiff's land in Columbia County, Arkansas.

In addition to injunctive relief, the plaintiff seeks an accounting of the gross proceeds of the defendants' plant or the gross sales of all products for the purpose of claiming the proportionate part of the products or sales therefrom taken from his lands as bears to the whole of the products going into the plant. The plaintiff claims that the defendants, by way of trespass upon his property, are depriving him of just compensation to which he is entitled from the sale of products being taken from his lands in connection with the operation of the defendants' plant in utilizing the product from within and under plaintiff's lands.

In addition to injunctive relief and an accounting, the plaintiff seeks an opportunity to establish damages to his property in a substantial amount from the defendants' recycling operation in connection with the bromide plant.

The plaintiff is a resident and citizen of Columbia County, Arkansas.

The defendant, Ethyl Corporation, is a Virginia corporation authorized to do business in the State of Arkansas.

The defendant, Great Lakes Chemical Corporation, is a Michigan corporation authorized to do business in the State of Arkansas.

The defendant, Calvert Exploration Company, is a Delaware corporation authorized to do business in the State of Arkansas.

The defendant, Bromet Company, is a limited partnership with Ethyl Corporation as the sole general partner and

Great Lakes Chemical Corporation as the sole limited partner. Bromet became a limited partnership under the laws of the State of Virginia and is authorized to do business in Columbia County, Arkansas.

The plaintiff is the owner of approximately 180-acres of land, more or less, in Sections 7, 8, and 18, of Township 18 South, Range 20 West, within the County, which is the subject of the plaintiff's Complaint and relief sought against the defendants.

The defendants, in combination, pursuant to contracts have leased a substantial block of lands consisting of approximately 16,000-acres for the purpose of extraction of brine from the Smackover Limestone Formation beneath the lands which is delivered to a recycling plant operated by Bromet. Bromet extracts bromine from the brine and sulphur from the hydrogen sulfide gas released by the brine delivered to its plant. The defendant, Calvert Exploration Company, under contract, delivers the product to the plant and, after the extraction, re-injects the debrominated water into the ground, thus forming a complete recycling operation.

Calvert had the responsibility of drilling the wells under contract with Ethyl. There were 23 such brine supply wells strategically placed within the leased area to supply the product for the extraction plant and 10 injection wells located on the perimeter of the leased lands for a continuing operation for production of bromine.[1]

The plaintiff's lands are located in the Southwest area of the leased block. The defendants' production well number 23 is located immediately to the North and West of the plaintiff's lands. The defendants' production wells numbered 18 and 18-A are adjacent to the North and East of the plaintiff's lands.[2]

In obtaining the numerous leases that make up the block in the recycling operation, Bromet attempted to purchase a lease from the plaintiff for the same consideration as was paid to all other mineral owners in the block at $25.00 an acre and, in addition, $10.00 per acre per year on an annual basis. The plaintiff declined the offer and eventually brought this proceedings against the defendants.

The amount in controversy exceeds $10,000.00, exclusive of interest and costs. Jurisdiction is therefore established. 28 U.S.C.A. § 1332.

The case was tried to the Court, without the intercession of a jury. It was commenced on Monday, October 29, 1973. Since the hearing was not concluded, it was adjourned and resumed November 1, 1973, and concluded November 2, 1973.

In addition to the testimony presented during the course of the hearings, depositions were entered, as were numerous exhibits. The parties were given substantial time to file briefs and responses thereto.

From the evidence in the case, exhibits, excellent briefs filed by counsel for the parties, and the entire record, the Court concludes that the plaintiff is the owner of approximately 180-acres of land situated in Columbia County, Arkansas. The defendants are the owners and operators of a bromine chemical

---

1. Bromine is an element, normally a deep red, caustic liquid emitting an irritating, reddish-brown, ill-smelling vapor used, inter alia, for manufacture of ethylene dibromide, a gasoline additive chemical.

2. Prior to the drilling of well number 18, plaintiff, J. M. Young, and his wife, Sally Young, had executed an Oil, Gas & Mineral Lease to Bryon H. Schaaf of Shreveport, Louisiana, which leases, at the time of drilling, were owned by T. V. Hunter Company. The mineral leases contained a special provision for the conveyance of salt water or any mineral contained in salt water. Hunter and Calvert jointly drilled an oil and gas well to the Cotton Valley Formation, which was a non-productive well. Subsequently, Calvert continued to drill the same well to the Smackover Limestone Formation. Well 18-A was operated as a brine supply well but, due to the limitation in relation to the other supply wells, No. 18 was drilled near to it to provide the production required in relationship to the entire cycling process.

plant in Columbia County, Arkansas, located adjacent to the plaintiff's lands.

It is established that the defendants have acquired and possess mineral leases consisting of a block of land of some 16,000-acres, commonly known as' "Kerlin Brine Field", upon which the defendants have caused to be drilled 23 wells for the extraction of bromine from the Smackover Lime Formation underlying these lands at a depth of some 8200' below the surface.

The defendants also drilled and operate 10 wells through which the salt water, after being processed through the bromine plant, and bromine extracted, is re-injected into the same formation under pressure. The injection wells generally form what, in fact, is a circle on the periphery of the brine field with the production wells operating within the circle. The debrominated water, injected under pressure, forces the underground salt water in place to move in the direction of the production wells, completing the recycling process for the extraction of bromine.

The plaintiff's lands are surrounded by the lands leased and purchased in fee by defendants within the Southwest area of the Kerlin Brine Field. An injection well, number 13, is located adjacent to and South of the plaintiff's lands, which, as shown by a preponderance of the evidence, forces the product to production wells numbered 18 and 23.

It is established, and undisputed, that the injection of debrominated waters from the defendants' plant through well numbered 13, under high pressure, displaces the brine waters in the formation underlying the plaintiff's lands, forcing it to move toward, and eventually produce through wells numbered 18 and 23. The salt water, by means of this artificially induced movement beneath the lands of Mr. Young, is carried to the processing plant where the valuable mineral bromine is removed and sold for the purposes hereinabove described. This recycling process has continued since the inception of the production and processing in 1969.

Although the defendants attempted to acquire a salt water lease from the plaintiff without success, the plaintiff, on August 21, 1970, made a demand of the defendants to account to him for his proportionate part of the net profits from the production of the salt water and the operation of the bromine plant on the basis that they were removing and extracting the product from beneath Mr. Young's lands. Defendants refused, but again attempted to purchase a lease from the plaintiff Young and he, again, refused to sell. During the course of the hearing, the defendants again stated that they would enter into the lease agreement with the plaintiff and pay the bonus price of $25.00 per acre and $10.00 per acre in lieu of royalty payments on a retroactive basis.

In seeking an accounting from the defendants, to establish his proportionate share of the net profits from the operation of the recycling plant, the plaintiff contends that he probably has been damaged in the sum of $9,000,000.00. The plaintiff has not, at any time, offered to share in the expenses or risks of the venture. One of the witnesses, Mr. Jameson, made an offer to participate in the expenses in return for a share of the profits after the venture proved to be profitable. The offer was rejected by the defendants.

■ Jurisdiction having been established by diversity, the substantive law of the State of Arkansas, as expressed by the State's highest court, is applicable. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Midstates Oil Corp. v. Waller, 207 F.2d 127, 130, 131 (5 C.A.1953); 28 U.S.C.A. § 1652.

In their carefully prepared briefs, reference has been made to numerous cases for jurisdictions outside of the State of Arkansas and principally so by counsel for the plaintiff. Although, the Court is impressed by the reasoning of counsel for the plaintiff, by a careful review of the cases relied upon, it would be contrary to long and well established rule to apply any rule of law other than the rule

established by the Supreme Court of Arkansas.

In applying the facts, as established in the instant case by a preponderance of the evidence, to the law as stated by the Arkansas Supreme Court in Osborn v. Ark. Territorial Oil & Gas Co., 103 Ark. 175, 146 S.W. 122 (1912), and which has consistently been determined by the Supreme Court of Arkansas as the Arkansas law, the position of the plaintiff is misplaced and untenable.

The Arkansas Supreme Court only recently reaffirmed the rule in the case of Budd v. Ethyl Corp., et al, 251 Ark. 639, 474 S.W.2d 411 (1971). The facts there were almost identical to the facts in the instant case. It involved the same defendants in their recycling operation in the same field, Kerlin Brine Field.

The plaintiff, Budd, owned 240-acres of land outside, but adjacent to, the boundaries of the defendants' recycling operation and held a small mineral leasehold interest on 40-acres within the boundaries of the field. Budd demanded an accounting for his proportionate share of the profits from the defendants' recycling operation.

The defendants filed a demurrer to the Complaint of Mr. Budd, which was sustained by the Columbia County Chancery Court, Second Division. The Supreme Court of Arkansas, on appeal, stated the question as whether the Complaint stated a cause of action.[3]

Appellant Budd asserted that the recycling operation was actually draining salt water from the 240-acres and that the appellee should be made to account to him for his share of the minerals that were being extracted from the salt water. The Supreme Court of Arkansas stated, inter alia, in response:

"That argument is refuted by the law of capture, which we hold to be applicable in this situation. That law was stated in our early case of Osborn v. Ark. Territorial Oil & Gas Co., 103

Ark. 175, 146 S.W. 122 (1912): 'Petroleum, gas and oil are substances of a peculiar character. * * * They belong to the owner of land, and are part of it so long as they are part of it or in it or subject to his control; but when they escape and go into other land or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own lands and taps a deposit of oil or gas extending under his neighbor's field, so that it comes into his well, it becomes his property.' Later cases are to the same effect." pp. 640–641, 474 S.W.2d p. 412.

The Court went on to say that it found no authority in the Oil and Gas Commission to order the unitization of salt water operations that have no bearing upon the extraction or conservation of oil or gas.

". . . . It follows that the law of capture prevents the appellant from maintaining his first asserted cause of action." p. 641, 474 S.W.2d p. 413.

Further, the appellant Budd demanded an accounting with respect to the 40-acre tract lying inside the appellee's circle of input wells, upon which the appellant (Budd) held an undivided ⅒th leasehold interest. The appellees owned all the rest of the 40-acre tract. The appellant again asserted his right to his proportionate share of the profits accruing from the recycling operation. The Supreme Court of Arkansas stated as to this contention:

"We think the chancellor was right in rejecting that contention. Here the issue turns upon the limited nature of a lessee's property rights, prior to his attainment of production." (Again, relying on Osborn, supra)

* * * * * *

" 'Our court has held that an oil and gas lease conveys an interest and easement in land itself, but no title passes until the oil and gas are reduced to possession.' "

---

3. The same counsel, Chambers & Chambers, representing the plaintiff, Young, in the instant case, were counsel for W. J. Budd v. Ethyl Corporation, et al. The same counsel for the defendants in the instant case, Anderson & Crumpler, and Baker & Botts, represented the defendants in the Budd case.

The Court went on to state that there is no trespass upon a vested existing property right, as is the case when a tenant in common of the mineral ownership drills a producing oil or gas well without the consent of his cotenant.

As the Supreme Court of Arkansas, in the Budd case, *supra,* made a clear, concise and unambiguous determination of the law, as applied to the instant case, this Court cannot re-examine the logic or wisdom of that Court, as urged by the plaintiff. In applying the rule, as clearly stated in the Budd case, this Court is constrained to conclude that the plaintiff has failed in its burden to prove, by a preponderance of the evidence, that the defendants have infringed upon any legally protected property rights of the plaintiff; furthermore, the plaintiff has failed to show any actionable conspiracy to deprive him of such rights. The Court concludes that the Complaint of the plaintiff is without merit and should be dismissed and judgment rendered for the defendants.

Findings of fact and conclusions of law are incorporated in this opinion pursuant to Rule 52 of the Federal Rules of Civil Procedure. An Order will be entered in accordance with this opinion.