562 So.2d 1048 (1990)
Thomas PLUNKETT, et ux., Plaintiffs-Appellees,
v.
D & L FAMILY PHARMACY, INC., Defendant-Appellant.
No. 89-8.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1990.
Robert L. Kennedy, Colfax, for plaintiffs-appellees.
*1049 Pharis & Pharis, Fred A. Pharis, Alexandria, for defendant-appellant.
Before DOMENGEAUX, C.J., and FORET and STOKER, JJ.
STOKER, Judge.

ISSUES
The issues presented by this appeal are (1) whether the lessor of a pharmacy building refused or neglected to make necessary repairs as provided and defined by LSA-C.C. art. 2694; (2) whether rescission of the lease in question is justified on the ground of nonpayment of rent and (3) whether one of the parties breached a contract not to compete.

TRIAL COURT PROCEEDINGS
This action began with a petition for past due rent and rescission of the lease in question. Defendant-lessee answered denying any rent was past due and stating that the amounts were legally withheld for necessary repairs. Defendant-lessee filed a reconventional demand for additional necessary repairs and for an injunction against plaintiff-lessors[1] based on a breach of a noncompetition agreement. The trial court held in favor of plaintiff-lessors awarding past due rent, attorney's fees and costs and canceling the lease. By implication the trial court also rejected the defendant-lessee's reconventional demand. Defendant-lessee appeals contending the judgment should be awarded in its favor on its demands.

FACTS
On January 11, 1985 Thomas and Eloise Plunkett (lessor) entered into a "Lease with Option to Buy Immovable Improved Property" with D & L Family Pharmacy, Inc., represented by D.L. Granger (lessee). Plunkett-lessor was formerly the owner-operator of Plunkett's Pharmacy, which occupied the premises which are the subject of the lease. The premises are located in Montgomery, Louisiana. The term of the lease is ten years at a price of $600 per month. Among other terms, the lease contains two provisions relevant to the current appeal. One provides that "Lessor agrees to maintain roof, foundation, exterior walls and heating and air conditioning equipment." Further, the lease contains a noncompetition clause which provides: "Lessor agrees that he will not compete in any similar or like business during the term of this lease, within a 15 miles radius of the Town of Montgomery, Louisiana."
It is undisputed that in August 1986 Plunkett began working as a pharmacist at a K & B drugstore in Natchitoches, Louisiana, which is 13.5 miles from the center of Montgomery, Louisiana.
The lessor and lessee met in the street in Montgomery, Louisiana on a day in May 1987, and together they inspected the double swinging front doors of the pharmacy building. The lessor agreed at that time that the doors needed repair and agreed to have them repaired. The double doors were glass doors. At the time of the execution of the lease contract, one of the two doors was fastened shut and had been so for many years, and the public gained access to the pharmacy through one door only. This door was kept shut because it was defective in some respect. At the trial Mr. Plunkett readily agreed that the doors needed to be worked on and repaired. That the double front doors needed repair and that the lessor through Mr. Plunkett agreed to repair the doors is not an issue in this case. Beyond this, matters are confused and are in contention. Mr. Plunkett, Mr. Granger, their counsel and the court used the words "repair," "fix" and "replace" interchangeably in referring to the double doors. Consequently, the testimony is difficult to follow at times. One fact is clear and that is that, as an ultimate matter, Mr. Granger had the doors replaced at a cost of $1,328 by DeBona Glass & Mirror, Inc. In so doing he countermanded an engagement Mr. Plunkett had made with *1050 Hall's Glass to replace the double doors with a single glass door with a glass side panel at a cost of $1,000.
From Plunkett's testimony his version of the facts is as follows. He requested an estimate from Hall's Glass to repair the existing doors, and the repair estimate was $1,000. Some spring or control device was built into the doors at the bottom of the doors. Plunkett claims Granger insisted that the doors be equipped with controls at the top. Plunkett also seems to maintain that Granger insisted that the doors be replaced rather than repaired. For whatever reason, Plunkett then decided to correct the situation with a single glass door with a glass side panel. Hall's Glass agreed to install the single door with side panel for $1,000, and Plunkett instructed Hall's Glass to proceed with the work. Plunkett later discovered that Granger had countermanded his order to Hall's to install the single door, and Granger had had the double glass doors replaced without his permission. At this point Plunkett informed Granger that the lessee could deduct $1,000 from the rent to compensate it for the cost of replacing the double doors. The lessee through Granger demanded that it be allowed credit on the rent for the full cost of replacing the doors, which was $1,328. The lessor refused, the lessee deducted $1,328 over several months and the lessor demanded payment of $328 as unpaid rent.
The lessee's position is in agreement with lessor's on some points. Whatever may have been the initial position of the leasor on the double doors, both sides agree that when Granger found out that Plunkett had authorized Hall's Glass to install a single glass door with side glass, Granger contacted Hall's and either canceled the order to Hall's Glass to do the work or otherwise influenced that company to hold off. Granger then had DeBona Glass replace the old doors with new ones.
In its reconventional demand the lessee alleged that it had informed the lessor of other parts of the leased pharmacy which needed repair or maintenance. The lessee alleged that the lessor had refused to make the repairs or perform the maintenance and asked for judgment against the lessor for the cost of the repair and maintenance. The items listed in the reconventional demand included replacement of a deteriorated gutter, replacement of double doors at the rear of the building, replacement of a single entrance door next door to a post office and repair of the air conditioning system.
The lessee complained to the lessor during the summer of 1987 of problems with the air conditioning system in the leased pharmacy. In the late summer of 1987 the lessor sent two different air conditioning repairmen to check the system. Basically, both found nothing wrong with the system. Both of these repairmen testified at the trial as experts in air conditioning systems repair. One of these experts, John Rollins, proposed to make a part replacement in an effort to satisfy the lessee's complaints. Before this could be done Granger had the work done on behalf of the lessee by Raymond G. Barton, a contractor of its own choosing. The lessee paid Barton $206.50 and deducted this amount from the rent due the lessor for October 1987. The lessor amended the petition and demanded payment of this amount.

JUDGMENT OF THE TRIAL COURT
The trial court gave judgment for the plaintiff-lessor. It awarded $534.50 as back due rent and $1,000 in attorney's fees and costs. Additionally, the court ordered that the lease be canceled and rescinded. The award of $534.50 represents $206.50 withheld for the work on the air conditioning system and $328 of the $1,328 withheld for replacement of the front double doors.

OPINION
Initially we note that we are bound by the trial court's findings of fact which are not clearly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). We agree with much of the trial court's findings of fact, and on some hotly disputed factual issues we find no clear error. We disagree with some of the trial court's conclusions or interpretations of fact or of the application of law to the facts.
*1051 With reference to whether or not the air conditioning system needed repair, the experts on both sides disagreed. We do not find that the trial court actually made a finding on this point, and it was perhaps not necessary for its decision. The trial court found as a fact that the lessee had $206.50 in repairs done without prior notification to the lessor and that the lessee did not give the lessor an opportunity to let the lessor's service people do the work. While this finding is a close factual question, it involves the credibility of witnesses and matters in which we must defer to the trial judge. Rosell v. ESCO, supra. On the basis of this factual finding the trial court held that the lessee was not entitled to withhold the $206.50 for air conditioning repair service and awarded this amount as part of the monetary award of $534.50. The trial court also held that the action of the lessor in ordering the air conditioning repair was a breach of the lease conditions and was ground for rescission of the lease. With this latter holding, a legal conclusion, we entirely disagree.
From the trial court's written reasons for judgment it is not clear whether the trial court meant that the action of the lessee in ordering the repair of the air conditioning unit justified rescission of the lease or withholding the $206.50 was the ground. In any event, we disagree with this legal conclusion which we will discuss later in this opinion.
Concerning the double doors replaced by the lessee, we find no disagreement with the facts as found by the trial court. However, one important episode in the controversy over the front doors was never mentioned in the trial court's reasons for judgment and evidently was overlooked by him. As the trial court correctly noted, Mr. Plunkett was entirely agreeable to repairing the front doors and may have been willing to go a long way in meeting the demands made by Granger for the lessee. At some point, however, Plunkett decided for some reason to change the plan and to replace the existing two doors with one door and a side glass panel. This fact is established by the testimony of Plunkett himself given at trial. Plunkett engaged Hall's Glass to do the work to install a single door with a side panel; it is this order that Granger countermanded or persauded Hall's Glass not to do. Had Hall's Glass gone ahead and installed the single door arrangement, it would have been contrary to the provision of LSA-C.C. art. 2698 which provides: "The lessor has not the right to make any alteration in the thing during the continuance of the lease."
In its reasons for judgment the trial court concluded that the lessee violated the following lease provision: "Lessee is obligated not to make any structural additions or alterations to the premises without specific written permission of the lessor." Although the trial court correctly concluded that the replacement of the front doors and the repair or service to the air conditioning equipment was done without the lessor's permission, we fail to see how either could constitute a structural addition to or an alteration of the premises. We presume that the trial court stated these conclusions to bolster its conclusion that the lease should be canceled and rescinded for nonpayment of the rent. We mention these conclusions of the trial court because we differ with the trial court and hold that the facts of this case do not justify breaking the lease.
Granger notified Plunkett that $1,328 would be deducted from the rent over the summer months of 1987 and the sum of $206.50 was withheld in October of 1987. This case was tried in March of 1988 and at that time the lessee had paid the rent due monthly as it came due. The only rent not paid is the sum of $534.50 which the lessee contends it was authorized to deduct under LSA-C.C. art. 2694. That article provides:
"Art. 2694. Lessee's right to make repairs upon lessor's failure
Art. 2694. If the lessor do not make the necessary repairs in the manner required in the preceding article, the lessee may call on him to make them. If he refuse or neglect to make them, the lessee may himself cause them to be made, and deduct the price from the rent due, on proving that the repairs were indispensable, *1052 and that the price which he has paid was just and reasonable."
Under the lease in question the lessor agreed to maintain the air conditioning equipment.
From the lessee's standpoint the question is whether the lessor refused or neglected to make repairs to the front doors and the air conditioning equipment. As we read the trial court's reasons for judgment, it holds there was no refusal to service or repair the air conditioning equipment. The trial court held that "[T]he plaintiff was not given the opportunity to have his service people come in and make any repairs." We defer to the trial court in this factual finding. Rosell v. ESCO, supra. With reference to the front doors, it is difficult to say what the lessor did in the context of refusal or neglect to repair them. Initially he was prepared to repair them. We do not know all that passed between Plunkett and Granger concerning the front doors. Plunkett may have been justifiably piqued at Granger, but this did not justify a complete alteration of the front doors from two doors to one door. In our opinion this may have amounted to a refusal to repair. LSA-C.C. art. 2698.
Under the lease the lessee bound itself not to make any structural additions or alterations to the premises without the specific permission of the lessor. In our opinion the replacement of the doors was neither a structural addition nor an alteration of the premises. Had the lessor had the front doors repaired instead of having them replaced, the lessee would be on firmer ground. In any event, we ultimately reach the same conclusion as the trial court concerning the obligation to pay the $328, although our reasons differ from those of the trial judge.
From the record we conclude that the lessee could have had the front doors repaired for $1,000 rather than having them replaced. The lessor agreed to allow the lessee $1,000 as a credit on the rent, and the trial court accepted this in giving judgment for only $328 of the sum of $1,328 expended by the lessee to replace the doors. Under the circumstances we see no equity in allowing the lessee a credit for more than $1,000. For these reasons we affirm the trial court's award of $534.50 in back rent due.
We now come to the lease rescission question. We reverse the judgment of the trial court ordering that the lease be canceled and rescinded. As will be abundantly clear from the foregoing, this case is not a run-of-the-mill case in which the tenant could not or would not pay rent. There is a serious dispute here as to whether the defendant-lessee's withholding of $534.50 in rent was justified under LSA-C.C. art. 2694. Until this dispute is judicially resolved, it would be most unfair and perhaps unconscionable to cancel the lease. Both parties appear to have acted impulsively at times. In our opinion Plunkett was at fault in proposing to alter the front doors and Granger was at fault in ordering replacement doors. Although we defer to the trial court's fact-finding as to the necessity of the $206.50 repair to the air conditioning system, the question was by no means a clear-cut matter.
The defendant-lessee urged before the trial court that under Louisiana law failure to properly pay rent does not automatically necessitate termination of a lease, and for this proposition the defendant-lessor cited Port Arthur Towing Company v. Owens-Illinois, Inc., 352 F.Supp. 392 (W.D.La. 1972). The trial court rejected this argument and stated the following in its reasons for judgment:
"Although this may be the case law on this issue, the court must look to the lease to resolve any dispute. It is a well established doctrine in contract law that the contract between parties is the law for the parties to follow. On page 4, Paragraph 6 of the lease, such states:
"`If any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, said default or failure is hereby agreed to be taken as a waiver of the notice to vacate the premises as required by the laws of the State of Louisiana, and said lessor is authorized without further formality to proceed immediately *1053 to eject lessee according to law as though said notice had been given as prescribed by law.'
"This clause gives the lessor the right to terminate the lease for any breach in the lease, with the lessee waiving all legal notices of eviction. Such being the case plaintiff has the right and is entitled to have the lease terminated and the defendant be evicted. This would be the judgment of this Court."
The trial court erred in this holding. This contract provision gives the lessor little more rights than the Louisiana Civil Code. LSA-C.C. arts. XXXX-XXXX. We see no reason why the Port Arthur Towing Company case should not apply here. (The suit of plaintiff is not an eviction suit in form or substance; it is a suit for unpaid rent and cancellation of the lease.) We adopt and follow the following expressions of the federal court in Port Arthur Towing Company:
"If PATCO's Sublease obligated it to pay an additional amount under the lease, which PATCO did not pay, we would be required to determine whether PATCO's failure to pay constituted sufficient cause for revocation. See La.Civ. Code Art. 2712. Under Louisiana law the rule is well established that the right to dissolve a lease is subject to judicial control according to the circumstances. Touchet v. Humble Oil and Refining Co., 191 F.Supp. 291 (W.D.La.1960); Edwards v. Standard Oil Company, 175 La. 720, 144 So. 430 (1932); Rudnick v. Union Producing Company, 209 La. 943, 25 So.2d 906 (1946); Farmers Gas Company v. LaHaye, 195 So.2d 329 (La. App.1967). Failure of a lessee to pay rent promptly does not automatically necessitate the termination of the lease. Rather, as this court made clear in Touchet:

"Louisiana has never followed a dogmatic rule requiring the mechanical application of a general rule that a lessor may dissolve a lease for failure on the part of lessee to pay rent promptly when due. On the contrary, in Louisiana the right to dissolve a lease is subject to judicial control according to the circumstances.
"In view of the extensive controversy as to the obligations of plaintiff and defendant, the uncertainty as to the proper apportionment of land and equipment values under the sublease, plaintiff's apparent willingness to pay whatever rent was due when defendant accelerated the future rent, and defendant's refusal to accept all tenders of rent in any case, it would be unjust to cancel this lease without giving PATCO a reasonable opportunity to pay any rent that may be declared due. Surely, to quote from the Louisiana Supreme Court in Rudnick:

"* * * in this case there were grounds for honest doubt as to the rights of the parties."
For discussion of a related problem and a court's willingness to at least consider an eviction proceeding under the abuse of rights doctrine, see G.M. Armstrong, Jr. and J.C. LaMaster, "Retaliatory Eviction As Abuse of Rights: A Civilian Approach to Landlord-Tenant Disputes," 47 La.L. Rev. 1, 1-5 (1986).
For the reasons given above we reverse the trial court's judgment insofar as it cancels and rescinds the lease entered into between the lessor and lessee.
In its recoventional demand the lessee sought recovery of a sum necessary to compensate it for enumerated repairs which it proposed to make to the pharmacy building other than the front doors and air conditioning or, alternatively, to allow the lessee to deduct such a sum from future rents until paid and for all costs of court. The items mentioned in the reconventional demand included replacement of a gutter on the front of the building, replacement of a single door next to the front of the building, replacement of a single door next to the post office and replacement of double doors at the rear of the building. Not pleaded but involved in the trial was a question of whether certain plate glass should be replaced. The trial court did not mention these items of the reconventional demand and the judgment is silent on these demands of the reconvener. Under the law *1054 they are considered as rejected by the trial court. FinanceAmerica Corp. v. Thibodeaux, 419 So.2d 543 (La.App. 3d Cir.1982) and cases cited therein. As the termination of the validity of these claims rests upon factual determinations, we must defer to the trial court's findings absent manifest error. Rosell v. ESCO, supra. With the exception of the situation regarding the gutter, we find no clear error on the part of the trial court in rejecting these items of the reconventional demand.
Regarding the situation of the gutter in question we do not know whether the trial court's rejection was based on a factual determination or an application of law. In any event, we consider it erroneous. On behalf of the trial judge we should say that he may have felt that it was unnecessary to deal with the reconventional demand items under discussion in view of the fact that his judgment canceled and rescinded the lease. If cancellation and rescission were in order we would perhaps agree with the trial judge that the issue concerning this item of the reconventional demand items was moot.
With regard to the gutter situation, Plunkett himself testified that the gutter needed to be taken down, and on advice of his attorney he did take the gutter down. Tr. 348-354. Although Plunkett was reluctant to admit outright that the gutter was deteriorated, it is clear from his testimony that it was. See particularly his testimony on page 354 of the transcript. When the issue of the gutter arose Plunkett caused the old gutter to be removed and had the store front repainted. Tr. 353. The lessor built the pharmacy building some years ago, and it was built with the gutter on the front. Plunkett maintained at the trial that the gutter performed no useful function. Whether it did or did not is irrelevant. The lessor leased the building with the gutter as a part of the building. The lessee is entitled to have a building with such a gutter. We can think of no reason why the lessor should not maintain the gutter and replace it as that appeared to be what was needed by Plunkett's own admission. Taking the gutter off with no intention of replacing it was a violation of LSA-C.C. art. 2698.
The objective evidence in the record entitles the reconvening lessee to be compensated for the cost of replacing the gutter. The reconvener, the lessee, called Russell Bell, owner of Dixie Roofing Company of Tioga, Louisiana, to testify concerning the cost of replacing the gutter. Before seeing the gutter he estimated that it would cost $1,800 to take down the gutter and replace it. After he inspected it, at which time Plunkett had had the gutter removed, Bell revised his price to $980. Therefore, this is the cost to replace the gutter.
We hold that the recovener-lessee is entitled to judgment for $980 to compensate it for the failure of the landlord to replace the gutter.
We now come to the final reconventional demand of D & L Family Pharmacy, Inc., the lessee, against one of the lessors, Thomas Plunkett. The lessee claims that Plunkett violated a noncompetition agreement in the lease by accepting employment with a K & B pharmacy in Natchitoches, Louisiana. The lessee makes strong argument and produced expert testimony to show a distinction between the nature of a pharmacist's employment from other types of employment which have been held not to be in competition with a business. The lessee's argument and evidence is persuasive, but we conclude that the trial court was correct in rejecting this reconventional demand. We adopt the pertinent portion of his opinion on this subject which we quote:
"The defendant in his reconventional demand contends that plaintiff has breached the non-competition clause of the lease. On page 5, paragraph 2 of the lease, such states that `Lessor agrees that he will not compete in any similar or like business during the terms of this lease, within a 15 mile radius of the Town of Montgomery, Louisiana.' The plaintiff testified that he was in fact employed by K & B Pharmacy in Natchitoches as a pharmacist. A certified land surveyor also testified that the K & B Pharmacy at which the plaintiff was employed *1055 was within the 15 mile radius of non-competition. The defendant considers this to be a breach of the non-competition agreement contained in the lease. The defendant seeks an injunction prohibiting the plaintiff from continuing his employment at the K & B Drug Store or working in any such capacity within the 15 mile radius during the term of this lease. The defendants consider mere employment by the plaintiff as a pharmacist as competition and the plaintiff would therefore be in breach of contract. In the case of Railway Audit & Inspection Co., Inc. v. Pendleton, 142 So. 781 (1932) the Louisiana Supreme Court stated the following:
"`There is a difference between entering into a line of business similar to another and in competition with it and accepting employment from a person or corporation conducting such business.'
"In the same case, the Louisiana Supreme Court also stated that contracts in restraint of trade should be strictly construed. The language of the lease entered into by the plaintiff and defendant reads as follows:
"`Lessor agrees that he will not compete in a similar or like business during the term of this lease, within a 15 mile radius of the town of Montgomery, Louisiana.'
"Applying the strict construction rule of the Railway case, the lease prohibits competition only. The Railway case also states that employment is not to be construed as competition. Therefore, it is the opinion of this court that the plaintiff is not in breach of the lease by working as a pharmacist."
We reject the demand of D & L Family Pharmacy, Inc. that Thomas Plunkett be enjoined from working as an employed pharmacist at K & B Pharmacy in Natchitoches, Louisiana.
The trial court awarded attorney's fees to the plaintiff, Thomas Plunkett, in the amount of $1,000. Presumably the trial court considered that attorney's fees were authorized by a provision of the lease. If applicable, the provision in question is hinged on the lease being terminated for cause. Since we reverse the trial court judgment canceling and rescinding the lease, the provision for attorney's fees must be rejected.

CONCLUSION
For the reasons given above we affirm the judgment of the trial court insofar as it awards the plaintiffs, Thomas Plunkett and Eloise Jenkins Plunkett, the sum of $534.50 to be paid by defendant, D & L Family Pharmacy.
The judgment of the trial court canceling and rescinding the lease between the two plaintiffs and D & L Family Pharmacy is reversed and set aside.
We affirm the trial court's rejection of reconventional demands of D & L Family Pharmacy, Inc. in all respects except for the trial court's ruling on the reconventional demand relating to the gutter on the front of the building. We reverse the latter ruling.
Accordingly, it is now ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of D & L Family Pharmacy, Inc. on its reconventional demand for the cost of replacing a gutter on the front of the building, and against Thomas Plunkett and Eloise Jenkins Plunkett, in the amount of $980.
The judgment of the trial court rejecting injunctive relief against Thomas Plunkett sought by D & L Family Pharmacy, Inc. is affirmed.
The judgment of the trial court awarding attorney's fees to plaintiffs' attorney is reversed and set aside.
The costs of this appeal and the costs of the appeal in the trial court are assessed equally to plaintiffs, Thomas and Eloise Jenkins Plunkett, and defendant and reconvener, D & L Family Pharmacy, Inc.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] The plaintiffs in this action are Thomas Plunkett and Eloise Jenkins Plunkett, husband and wife. For convenience's sake we generally refer to them in the singular as "lessor." Where we refer to Mr. Plunkett or Plunkett we refer to him concerning action he took or testimony he gave.